FILED

2015 Aug-24  AM 11:17
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| ANTONIO HEAD, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  7:14-cv-01788-HGD |
| | ) | |
| CARY BAISDEN, et al., | ) | |
| | ) | |
| Defendants | ) | |

## REPORT AND RECOMMENDATION

The above-entitled civil action is before the court on the Motions to Dismiss filed by defendants City of Tuscaloosa, Cary Baisden and Stephen D. Anderson. (Docs. 5 & 7).  Plaintiff has filed a response (Doc. 10), and defendants Baisden and Anderson have filed a reply (Doc. 11).

## The Complaint

The complaint (Doc. 1) alleges that plaintiff, Antonio Head, and a friend, Rakeem Evins, were driving in Tuscaloosa on January 13, 2013.  Defendant Sergeant Cary Baisden, a police officer for the City of Tuscaloosa, turned off Hargrove Avenue onto 10th Avenue behind plaintiff and turned on the blue lights of his police car. Plaintiff applied the brakes on his vehicle and turned onto the first possible side street

off 10th Avenue, Meadow Lawn Drive.  The complaint alleges that, after making the stop of plaintiff's vehicle, Baisden told plaintiff to put his hands in the air and plaintiff complied.  Another officer arrived, and Baisden told that officer to get Evins out of the car first.  After Evins exited the vehicle, Baisden pulled his gun, allegedly without provocation, and pointed the gun at plaintiff while plaintiff was still in the car.  Baisden told plaintiff he would shoot him and if plaintiff put his hands down, it was going to "get bad."  Baisden removed plaintiff from the car and asked plaintiff if he had any weapons; plaintiff said he had a small knife in his pocket.  Plaintiff alleges that Baisden told him, "Don't reach or I'll put your face through the window." Baisden then placed handcuffs on plaintiff, but Baisden told plaintiff he was not under arrest, only being detained.  The officers on the scene began looking through the windows of plaintiff's car with flashlights.  After eight minutes, Baisden and another officer then opened the car doors to search the vehicle and, after 30 seconds, Baisden said he found a gun between the seats covered with a black bandanna. Plaintiff and Evins were arrested and taken to the Tuscaloosa County Jail.  Plaintiff remained in the county jail for nine months.

On October 10, 2013, Baisden testified at a probable cause hearing, and plaintiff claims Baisden lied under oath, in contradiction to what was shown of the

incident on the dash camera video from Baisden's police car.[1]  The judge presiding over the probable cause hearing found probable cause to charge plaintiff with possession of a firearm by a person forbidden to do so, basing this finding on Baisden's allegedly perjured testimony.  Plaintiff claims that due to the illegal search and Baisden's perjury, plaintiff remained in jail from January 13, 2013, to October 21, 2013.

Plaintiff alleges that in October 2013, federal prosecutors obtained the dash camera video from Baisden's patrol car, and the United States Attorney's Office then filed a motion to dismiss the federal charge (violation of 18 U.S.C. § 922(g)(1)) against plaintiff.  On October 18, 2013, United States District Judge L. Scott Coogler granted the motion to dismiss and ordered plaintiff to be released immediately.  The criminal charges in Tuscaloosa County were no billed.  At the time of his arrest, plaintiff was employed by Coyle Industries, but he lost nine months of wages, as well as his job.

Plaintiff asserts causes of action for violation of his Fourth, Fifth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, based on claims of

---

[1] Plaintiff avers that Baisden falsely testified that plaintiff sped up and traveled about an eighth of a mile before pulling over.  Plaintiff avers Baisden also falsely testified, "After we removed the – both occupants from the vehicle, I actually could see the gun before I ever asked them anything about it. And once we got them out, detained them, then I asked who – who the gun belonged to." Plaintiff claims also that Baisden falsely testified that he questioned plaintiff about the gun before entering the car.

unlawful search and seizure (Count One)[2], false arrest and imprisonment (Count

Two)[3], and malicious prosecution (Count Four)[4]; a state law claim for false arrest and

imprisonment pursuant to *Ala. Code* § 6-5-170 (Count Three)[5]; a state law claim for

malicious prosecution (Count Five)[6]; a state law claim of outrage (Count Six)[7]; and

---

[2] This claim is made against defendant Baisden in his official and individual capacities, and against Anderson and the City of Tuscaloosa in their official capacities. However, the court notes that in the "Parties" portion of the complaint, it states that Baisden is sued in his individual capacity and does not mention any claim against him in his official capacity. (Doc. 1 at ¶ 5(a)).

[3] This claim mentions only the alleged action of defendant Baisden, and plaintiff does not state whether the claim is made against him in his official or individual capacity, or both. In addition, plaintiff refers to the "failure of the department to quickly remedy the situation," making it unclear if he also is asserting this claim against Anderson and the City of Tuscaloosa. Adding to the uncertainty about which defendants are included in the count is the fact that at the end of the count, plaintiff demands judgment against "the Defendants." However, the court will construe this count as being made against all defendants.

[4] This claim mentions only the alleged action of defendant Baisden, and plaintiff does not state whether the claim is made against him in his official or individual capacity, or both. In addition, plaintiff refers to the "failure of the department to quickly remedy the situation," making it unclear if he also is asserting this claim against Anderson and the City of Tuscaloosa. Adding to the uncertainty about which defendants are included in the count is the fact that at the end of the count, plaintiff demands judgment against "the Defendants." However, the court will construe this count as being made against all defendants.

[5] This claim appears to be made against defendant Baisden only. There is no allegation regarding any failure of the department to remedy the situation. However, the court notes that at the end of the count, plaintiff demands judgment against "the Defendants." The court will construe this count as being made against all defendants.

[6] This claim appears to be made against defendant Baisden only. There is no allegation regarding any failure of the department to remedy the situation. However, the court notes that at the end of the count, plaintiff demands judgment against "the Defendants." The court will construe this count as being made against all defendants. Further, plaintiff invokes *Ala. Code* § 12-19-271 as the basis for this count. However, this code section is contained within the Alabama Litigation Accountability Act, which allows a court to award attorney's fees and costs against an attorney or party who has asserted a claim or defense in a <u>civil</u> case that the court determines to be without substantial justification. *See Ala. Code* § 12-19-272(a). In addition, this section does not create a

a state law claim for failure to supervise/failure to train against defendants Steven D. Anderson (Chief of Police for the Tuscaloosa City Police Department)[8] and the City of Tuscaloosa (Count Seven).

## The Motion to Dismiss–City of Tuscaloosa

The City of Tuscaloosa moves to dismiss all claims against it in Counts One, Two and Four of the complaint, which are brought pursuant to 42 U.S.C. § 1983, citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The City of Tuscaloosa also seeks dismissal of Count Three, on the grounds that a municipality cannot be liable for the acts of its servants in making false arrests or instituting a malicious prosecution. The City of Tuscaloosa asserts that it cannot be liable for the intentional tort of outrage. The City of Tuscaloosa also contends that Count Seven fails to meet the pleading requirements of Rule 8(a), Fed.R.Civ.P., in that it makes only conclusory allegations that because there was an unlawful search, there must be inadequate training or supervision. The City argues that plaintiff has failed to allege

---

new or separate cause of action. *Baker v. Williams Bros., Inc.*, 601 So.2d 110 (Ala.Civ.App. 1992).

[7] This claim appears to be made against defendant Baisden only. There is no allegation regarding any failure of the department to remedy the situation. However, the court notes that at the end of the count, plaintiff demands judgment against "the Defendants." The court will construe this count as being made against all defendants.

[8] Plaintiff has averred that he sues Anderson in both his individual and official capacities (Doc. 1, Complaint, ¶ 5(b)); therefore, it appears that Anderson is sued in his individual and official capacities in Count Seven.

any specific facts as to how the City's training/supervision for police officers was negligent and has failed to allege deliberate indifference as the moving force for plaintiff's injury due to a specific absence of training or the particular content of any training. Finally, the City asserts that all claims for punitive damages against the City are due to be dismissed based on immunity, citing *Ala. Code* § 6-11-26.

## The Motion to Dismiss-Baisden and Anderson

Defendants Baisden and Anderson assert that all claims against them in their official capacities are due to be dismissed because such a claim may only be brought against the City of Tuscaloosa. Defendants also contend that plaintiff's claims are grounded in his allegation that Baisden acted without probable cause; however, plaintiff's factual allegations regarding probable cause (or lack thereof) are not sufficiently specific to state a claim. Further, because the state court found probable cause, defendants assert that there exists a presumption of probable cause which plaintiff has failed to overcome with his conclusory allegations. They also assert that plaintiff has failed to state a claim for outrage based on the allegations in the complaint.

Defendant Anderson contends that plaintiff has not alleged that he participated in any way in the arrest or search; therefore, only Count Seven (failure to supervise or train) is actually brought against Anderson. With respect to Count Seven,

Anderson contends that plaintiff has failed to allege facts regarding the content of Baisden's training or supervision, or any act or omission by Anderson demonstrating that he was subjectively, deliberately indifferent.

Defendants Baisden and Anderson also assert qualified immunity and state-agent immunity with respect to all claims asserted against them, and they contend plaintiff has failed to plead sufficient facts or identify a controlling legal principle to demonstrate that immunity is not applicable. Specifically, they argue that plaintiff has failed to plead facts to establish an absence of arguable probable cause or that an inventory search was improper under the circumstances. They also argue that plaintiff has alleged no facts that would even suggest there was a lack of adequate training and supervision.

### DISCUSSION

### A.    City of Tuscaloosa

### 1.    Counts One, Two and Four

 The City may not be held accountable under 42 U.S.C. § 1983 for a municipal policy on the basis of a single incident, nor may liability exist on the theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) ("we conclude that a municipality cannot be held liable solely because it employs a tortfeasor–or, in other words, a municipality cannot

be held liable under § 1983 on a *respondeat superior* theory."); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986); *City of Oklahoma v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985); *Williams v. City of Albany*, 936 F.2d 1256 (11th Cir. 1991).

A governmental entity cannot be held liable under § 1983 unless an injury is inflicted by a government's custom or policy. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. A plaintiff seeking to hold a municipality liable under § 1983 must "identify a municipal policy or custom that caused the plaintiff's injury." *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999) (internal quotation and citation omitted). The Eleventh Circuit has defined custom as "a practice that is so settled and permanent that it takes on the force of the law." *Wayne*, 197 F.3d at 1105 (quoting *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 852, 139 L.Ed.2d 753 (1998)). In order for a plaintiff to demonstrate a policy or custom, it is "generally necessary to show a persistent and wide-spread practice." *Id.* (internal quotations and citations omitted). *See also Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994).

This threshold identification of a custom or policy "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be

those of the municipality." *Board of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403-04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (citations omitted).  In the absence of a stated custom or policy, a plaintiff must show that there was a pattern of deliberate indifference that is "so widespread as to have the force of law." *Brown*, 520 U.S. at 404, 117 S.Ct. at 1388; *see also Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1310-11 (11th Cir. 2011).  This prevents the imposition of liability based upon an isolated incident.  *See Depew v. City of St. Marys*, 787 F.2d 1496 (11th Cir. 1986) ("Normally, random acts or isolated incidents are insufficient to establish a custom or policy.").  Rather, the incident must result from a demonstrated practice.  *See Wayne*, 197 F.3d at 1106 (determining that a single decision, "even if erroneous, would not support the inference that the County had a custom or policy" in place).

Absent an allegation that the City's police department had a custom or policy which caused Baisden to engage in the acts complained of, the complaint fails to state a § 1983 claim against the City of Tuscaloosa.  *See Kelly v. Broward Sheriff's Office*, 560 Fed.Appx. 818, 821 (11th Cir. 2014).  Further, bare allegations that a municipality fails to train its officers, that an officer's actions were within the municipality's policy or custom, that the municipality ratified an officer's conduct, and that a municipality's police officers routinely violate the Fourth and Fourteenth

Amendments are insufficient to allege a policy or custom. *See Gray v. City of Roswell*, 486 Fed.Appx. 798, 800-01 (11th Cir. 2012). A general assertion that a city has a "custom or policy" to violate constitutional rights is insufficient; there must be factual allegations to support a plausible inference that such a policy existed. Allegations relying solely on a police officer's conduct in one instance and the supervisor's failure to punish the officer afterward are insufficient to survive a motion to dismiss. *See Barr v. Gee*, 437 Fed. Appx. 865, 874-75 (11th Cir. 2011).[9]

Plaintiff has cited *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987), for the proposition that "tacit authorization" or deliberate indifference by a municipality toward police misconduct may rise to the level of a custom or policy. "[A] municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (quoting *Brooks v. Scheib*, 813

---

[9] In *Barr*, the court dismissed civil rights claims by an arrestee based on an alleged search and seizure and detention. The plaintiff alleged that the county was vicariously liable for the misconduct of its employees because it had a custom of tolerating violations of constitutional rights. However, he offered no factual allegations to support a plausible inference that such a custom existed. Instead, he relied only on the employees' conduct in the one instance and the supervisors' alleged failure to punish the employees afterward. The Eleventh Circuit stated, "As employees' actions do not imply municipal liability absent an official policy or custom, and a single incident does not support an inference of such a policy, the district court did not err in finding that Barr had failed to state a claim for municipal liability." 437 Fed.Appx. at 875.

at 1193).[10]  While this statement of the law is correct, in *Brooks*, the appellate court found no evidence that city officials were aware of past police misconduct.  *Compare Depew, supra* (city aware of prior incidents where police had used excessive force, but nevertheless failed to take remedial action).

To prove 42 U.S.C. § 1983 liability against a municipality based on an unofficial custom, a plaintiff must establish a practice so widespread that, "although not authorized by written law or express municipal policy," it is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991).  If a practice is "long-standing and widespread," it can be "deemed authorized by the policy-making officials because they must have known about it but failed to stop it." *Id.*  A failure to stop mere isolated incidents cannot be deemed tacit approval: "random or isolated incidents are insufficient to establish a custom or policy." *Depew*, 787 F.2d at 1499.

Because of this high burden for plaintiffs attempting to establish municipal liability for the constitutional torts of employees, even a city that did fail to

_____

[10] In *Griffin*, the evidence established that sexual harassment was an ongoing, accepted practice at the City and that the City Commission, Mayor, and other high ranking City officials knew of, ignored, and tolerated the harassment.  The Eleventh Circuit found this evidence sufficient to support the jury's conclusion that sexual harassment was so persistent and widespread as to amount to a unconstitutional policy or custom.

adequately train or supervise police officers would not automatically be liable under

42 U.S.C. § 1983 if one of its police officers committed a constitutional tort:

> There are only "limited circumstances" in which an allegation of a
> failure to train or supervise can be the basis for liability under § 1983
> . . . The Supreme Court has instructed that these limited circumstances
> occur only where the municipality inadequately trains or supervises its
> employees, this failure to train or supervise is a city policy, and that city
> policy causes the employees to violate a citizen's constitutional rights.

*Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "A municipality's

failure to correct the constitutionally offensive actions of its police department may

rise to the level of a custom or policy if the municipality tacitly authorizes these

actions or displays deliberate indifference towards the police misconduct," but there

must at least "be evidence that city officials were aware of past police misconduct"

in order to find liability. *Brooks v. Scheib*, 813 F.2d at 1193 (citations omitted). In

*Lavassani v. City of Canton, Ga.*, 760 F.Supp.2d 1346, 1360-61 (N.D.Ga. 2010), the

court rejected an attempt to impose municipal liability solely on the basis of one event

as evidence sufficient to support a claim of a policy or custom. Further, the plaintiffs

failed to identify any evidence, outside of the events surrounding the action made the

basis of the complaint, to support a finding of "a persistent and widespread practice"

and awareness by city officials. Thus, the plaintiffs failed to present evidence to

support their claim of a custom or policy by the City of Canton.

In *Schutt v. Lewis*, 2013 WL 3323667 (M.D.Fla. July 1, 2013), the district court granted a motion to dismiss (without prejudice) a municipal liability claim based on a police officer shooting the plaintiffs' dog. In so doing, the court stated, "[t]here are no allegations that there were past shootings, or that Lewis had shot dogs previously while on duty. There are no allegations that the City knew about past shootings so that it could tacitly authorize such conduct. The general allegations of the complaint relate to a single incident involving a single officer. This is not a sufficient basis for this theory of liability." *Id.* at *4.

In the instant case, there is no allegation that the City was aware of past incidents of police misconduct with respect to searches or arrests, yet failed to take remedial action. The only allegation is that Anderson and the City were aware of Baisden's dashcam video, yet failed to have the charges against plaintiff dismissed. This is an isolated incident that cannot, alone, support any finding of custom or policy on the part of the City.

Plaintiff argues in his brief in opposition to the motion to dismiss that the City of Tuscaloosa is liable under § 1983 because it sanctioned the acts of the individual defendants. He argues that a wrongful act is officially sanctioned when it can be shown that the violation was caused by execution of an express policy or was caused by a widespread practice or custom. He also argues that an unconstitutional policy

"could be inferred from a single decision" by the highest officials in the municipality, or that if a subordinate acts in an unconstitutional manner, even contrary to policy, the act can be considered official policy of a superior with the power to set policy ratifies or approves the act.  Plaintiff asserts that defendant Anderson instructed his officers to violate individuals' Fourth Amendment rights in order to investigate lawful possession of a firearm, relying on statements allegedly made by Anderson to a newspaper.  However, none of the arguments made by plaintiff in his brief to claim some sort of custom or policy are contained in any allegations in the complaint.  The inclusion of such assertions in a brief are simply insufficient to correct clear deficiencies in the complaint.

The court notes that the complaint does not allege any custom or policy of the City of Tuscaloosa which led to the alleged unlawful acts of its servants.  It alleges only that lack of training or inadequate training in proper search and seizure led to Baisden's actions, without further elaboration.  The complaint also does not allege that defendant Anderson instructed Baisden to act unlawfully.   Absent such allegations, with some supporting factual details to support a plausible inference that such a policy existed, the complaint fails to state a claim pursuant to 42 U.S.C. § 1983 against the City of Tuscaloosa.  Further, the complaint must contain more than allegations about Baisden's conduct on one occasion and Anderson's alleged failure

to punish Baisden afterward; the complaint as currently pled is insufficient to survive a motion to dismiss, and the City cannot be held liable under the case law cited by plaintiff.

### 2.    Counts Three, Five and Six

Because it is not clear from the complaint whether plaintiff intended to name the City of Tuscaloosa as a defendant for Counts Three (state law false arrest and imprisonment), Five (state law malicious prosecution) or Six (state law outrage), the court will consider whether the City's motion to dismiss as to these counts may be granted.  *Ala. Code* § 11-47-190 provides in relevant part:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured.

Intentional tort claims cannot be brought against a municipality.  *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724 (11th Cir. 2010) (city not liable for excessive force

during arrest); *Neighbors v. City of Birmingham*, 384 So.2d 113 (Ala. 1980) (municipality not liable for officers' false arrest or malicious prosecution); *Walker v. City of Huntsville*, 62 So.3d 474 (Ala. 2010) (municipality not liable for malicious prosecution, outrage or invasion of privacy).

Therefore, the City of Tuscaloosa's motion to dismiss Counts Three, Five and Six, to the extent the complaint may be read as asserting such claims against it, is due to be granted.

### 3.    Count Seven

Plaintiff alleges in Count Seven that the City of Tuscaloosa is liable for failure to train and failure to supervise.[11]  Plaintiff alleges that due to lack of training and supervision, defendant Baisden committed the acts complained of, with "indifference to plaintiff's constitutional rights"; therefore, Tuscaloosa's training regarding traffic stops, searches and seizures was "woefully deficient."  (Doc. 1, Complaint, ¶ 62).  It is unclear whether plaintiff is claiming that the City was negligent in its training and supervision, or whether he is claiming the City was wanton in failure to train and supervise.

_____

[11] Plaintiff does not invoke 42 U.S.C. § 1983 as a basis for this claim.  Out of an abundance of caution, the court will discuss this claim as being made pursuant to 42 U.S.C. § 1983 and state law.

Inadequacy of police training may serve as a basis for § 1983 municipal liability only where failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Municipal liability may be based on a claim of inadequate training where "a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants such that the failure to train can be properly thought of as a city policy or custom that is actionable under § 1983." *Albra v. City of Ft. Lauderdale*, 232 Fed. Appx. 885, 890 (11th Cir. 2007) (citations omitted).[12] Establishing municipal liability for a failure to train offending employees presents "difficult problems of proof," lest the inquiry collapse into *respondeat superior. Connick v. Thompson*, 563 U.S. 51, __, 131 S.Ct. 1350, 1365, 179 L.Ed.2d 417 (2011). Furthermore, vague and conclusory allegations in a complaint without specific factual support are insufficient to support a civil rights complaint because such complaints are held to a higher pleading standard, and unsupported conclusions of law do not meet that standard. *Albra*, 232 Fed. Appx. at 890 (citing *GJR Invs., Inc. v. County of Escambia, Florida*,

---

[12] In *Albra*, the court dismissed a claim of negligent training against a municipality because the plaintiff failed to allege that the city knew of a need to train its employees in a specific area. Further, even though the plaintiff alleged a custom or policy by police officers, he did not provide any factual support to suggest that department officials or the city was on notice of this custom. The complaint contained only conclusions of law without any factual support and therefore failed to state a claim of negligent training.

132 F.3d 1359, 1367 (11th Cir. 1998), and *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003)).

The allegations in Count Seven are merely conclusory and do not recite any facts or policies which would support a claim against the City of Tuscaloosa for an official custom or policy of failure to train and supervise.  *See Gray v. City of Roswell*, 486 Fed.Appx. 798 (11th Cir. 2012).  Plaintiff's claim for failure to train does not allege or provide factual allegations to support an inference of deliberate indifference on the part of the City.  In order to establish deliberate indifference, the "plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Lewis v. City of W. Palm Beach, Fla*., 561 F.3d 1288, 1293 (11th Cir. 2009) (quotation omitted).  A municipality may be put on notice if either (1) the municipality is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, or (2) the likelihood for a constitutional violation is so high that the need for training would be obvious. *Barr*, 437 Fed. Appx. at 874.

Plaintiff has alleged that the likelihood for constitutional violations during a traffic stop is so high that the need for training is obvious.  (Doc. 1, Complaint, ¶ 60).

However, this bare allegation, without more, is insufficient to state a claim under § 1983 against the City.

If it is claimed that the City (and Anderson) were negligent or wanton under state law in lack of training and supervision, then state agent immunity bars such a claim. It is only where a state agent acts willfully or intentionally that state-agent immunity may be lost. In *City of Crossville v. Haynes*, 925 So.2d 944 (Ala. 2005), the Alabama Supreme Court considered a claim against the police chief and the city that they negligently or wantonly failed to train its employees to perform a booking or intake evaluation on arrestees and prisoners and negligently or wantonly failed to train its employees to properly supervise, evaluate, and monitor arrestees and prisoners. In affirming dismissal of this claim, the Court stated:

> First, Chief Priest was charged with the responsibility of establishing the policies and procedures of the police department and the Crossville city jail, including the manner in which the employees of the police department were trained to supervise, evaluate, and monitor arrestees and prisoners. The establishment of such policies and procedures is within the exercise of the chief of police's judgment in the administration of the department. Acts or omissions dealing with the establishment of such policies or procedures fall within the State-agent-immunity protections discussed in *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000). *See Howard v. City of Atmore*, 887 So.2d 201, 210 (Ala. 2003). . . .
>
> However, as recognized in *Howard*, if a state actor is immune from liability for a particular act or omission, the state or municipality is also immune from liability for the same act or omission.

*Id.* at 954.

### 4.    Punitive Damages

Alabama Code § 6-11-26 provides, "Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof, except any entity covered under the Medical Liability Act now codified as Section 6-5-480 *et seq*., or any acts amendatory thereto."  It is clear that this statute bars any claim for punitive damages against the City.  Further, a municipality is immune from punitive damages under 42 U.S.C. § 1983.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981); *Harrelson v. Elmore County, Ala.*, 859 F.Supp. 1465, 1467 (M.D.Ala. 1994). Therefore, Tuscaloosa's motion to dismiss any claim for punitive damages against it is due to be granted.

### B.    Cary Baisden

### 1.    Official Capacity Claims

Plaintiff does not dispute that any official capacity claims against Baisden are due to be dismissed, inasmuch as they are actually claims against the City of Tuscaloosa.  *See Monell*, 436 U.S. at 690-91, 98 S.Ct. at 2036; *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999).  A suit against a public official in his official capacity is, in all respects other than name, treated as a suit against the local

government entity he represents, assuming that the entity receives notice and an opportunity to respond. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Therefore, the motion to dismiss of Baisden is due to be granted as to any claims in his official capacity.

### 2.    Count One

Count One alleges a claim under 42 U.S.C. § 1983 for unlawful search and seizure. The Fourth Amendment protects individuals from unreasonable search and seizure. A traffic stop is a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). Because a routine traffic stop is only a limited form of seizure, it is more analogous to an investigative detention than a custodial arrest. *See Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). Therefore, the legality of these stops are analyzed under the standard articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990); *United States v. Hardy*, 855 F.2d 753, 758 (11th Cir. 1988). Under *Terry*, an officer's actions during a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20, 88 S.Ct. at 1879. Furthermore, the duration of the traffic stop must be limited to the time

necessary to effectuate the purpose of the stop.  *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999).  The traffic stop may not last "any longer than necessary to process the traffic violation" unless there is articulable suspicion of other illegal activity.  *United States v. Holloman*, 113 F.3d 192, 196 (11th Cir. 1997).

In this case, there is no allegation of the reason for Baisden's stop of plaintiff's vehicle.  If Baisden had some legitimate reason for the stop, then his action in ordering plaintiff to exit the vehicle was permissible.  *See Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977) (*per curiam*) (officer may order driver out of car during routine *Terry* stop of a vehicle).

Under the facts as pled by plaintiff, Baisden determined from plaintiff that he had a small knife in his pocket and then placed plaintiff in handcuffs but told him he was not under arrest.  Baisden then looked through the windows of the vehicle before finally opening the vehicle door and finding a gun under a black bandanna, all without a warrant.[13]  At this point, according to the complaint, plaintiff was placed under arrest.

It is true that an officer who makes a lawful custodial arrest of the occupant of an automobile may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile.  *New York v. Belton*, 453 U.S. 454, 460,

---

[13] Though Baisden testified at the preliminary hearing that he was able to view the gun from outside the vehicle, plaintiff has alleged that Baisden testified falsely.

101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).  However, plaintiff has alleged that he was not under arrest at the time Baisden searched the vehicle.  While plaintiff was in handcuffs, that does not necessarily equate to an arrest, as defendant argues.  It may be permissible for an officer to handcuff a person without actually arresting him, if the officer believes that such detention is necessary for protection.  Plaintiff has specifically alleged that Baisden informed him he was not under arrest prior to the search of the vehicle.  Under the facts as alleged in the complaint, the warrantless search of plaintiff's vehicle was not a valid inventory search.  Inventory searches of lawfully impounded vehicles are an exception to the warrant requirement of the Fourth Amendment.  *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).  However, because plaintiff was not under arrest at the time of the search, then the search was not a valid inventory search.

In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court stated:

> Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect.  These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses

a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. FN14 *See Terry*, 392 U.S., at 21, 88 S.Ct., at 1880. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*, at 27, 88 S.Ct., at 1883. If a suspect is "dangerous," he is no less dangerous simply because he is not arrested. If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances. *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971); *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978); *Texas v. Brown*, ___ U.S. ___, ___, ___, 103 S.Ct. 1535, 1541, 1544, 75 L.Ed.2d 502 (1983) (plurality opinion by REHNQUIST, J., and opinion concurring in the judgment by POWELL, J.).

> FN14. We stress that our decision does not mean that the police may conduct automobile searches whenever they conduct an investigative stop, although the "bright line" that we drew in *Belton* clearly authorizes such a search whenever officers effect a custodial arrest. An additional interest exists in the arrest context, i.e., preservation of evidence, and this justifies an "automatic" search. However, that additional interest does not exist in the *Terry* context. A *Terry* search, "unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime. . . . The sole justification of the search . . . is the protection of police officers and others nearby . . . ." 392 U.S., at 29, 88 S.Ct., at 1884. What we borrow now from *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and *Belton* is merely the recognition that part of the reason to allow area searches incident to an arrest is that the arrestee, who may not himself be armed, may be able to gain access to weapons

> to injure officers or others nearby, or otherwise to hinder
> legitimate police activity.  This recognition applies as well
> in the *Terry* context.  However, because the interest in
> collecting and preserving evidence is not present in the
> *Terry* context, we require that officers who conduct area
> searches during investigative detentions must do so only
> when they have the level of suspicion identified in *Terry*.

*Id*. at 1049-50, 103 S.Ct. at 3480-81.

The fact that plaintiff was handcuffed did not necessarily equate to being under

arrest and plaintiff has alleged that Baisden informed him he was not under arrest.

*See United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995) (noting that "the

fact that police handcuff the person . . . does not, as a matter of course, transform an

investigatory stop into an arrest.").  Plaintiff has alleged that when he saw the blue

lights on Baisden's police car, he put on his brakes and immediately pulled off 10th

Avenue on the first possible side street in a residential area.  Had plaintiff sped up and

traveled for some distance before pulling over, as Baisden testified (plaintiff alleges

such testimony was false), then Baisden may have possessed "a reasonable belief

based on 'specific and articulable facts which, taken together with the rational

inferences from those facts, reasonably warrant' [Baisden] in believing that [plaintiff

was] dangerous and . . . may gain immediate control of weapons."  However, the act

of a motorist in braking and immediately pulling over to a side street when blue lights

are activated does not, in and of itself, provide such a reasonable belief.  Further,

when Baisden conducted the search, plaintiff was already handcuffed and could not have gained control over any weapons and was not under arrest. The factual allegations of the complaint do not support defendant's contention that he had probable cause to search plaintiff's vehicle. Absent probable cause to search the vehicle, Baisden's search and subsequent discovery of the gun, which plaintiff alleges was not in plain sight, was not valid and could therefore not support plaintiff's arrest.

Baisden has claimed qualified immunity with respect to plaintiff's claims pursuant to 42 U.S.C. § 1983. The so-called doctrine of "qualified immunity" is a defense to a § 1983 claim, and provides "complete protection for governmental officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As the Eleventh Circuit observed in *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002):

> The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, *see Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987), protecting from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001).

*Lee*, 284 F.3d at 1193-94; *see also, e.g., Chesser v. Sparks*, 248 F.3d 1117, 1121-22 (11th Cir. 2001).

A valid qualified immunity defense has three parts.  The defendant must first prove that he was acting within his "discretionary authority."  *Lee*, 284 F.3d at 1194. If the defendant makes that showing, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate by demonstrating (ii) the deprivation of a constitutional or federal statutory right (iii) that was clearly established when the defendant acted.  *See Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009).

While the determination of whether a federal constitutional or statutory right was violated depends on the right asserted, a common standard is used to determine whether a right was "clearly established."

> For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell [v. Forsyth*, 472 U.S. 511, 535 n.12, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

*Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).  A right is "clearly established" for purposes of the doctrine of qualified immunity if an earlier court decision "gave reasonable warning that the conduct then at issue violated constitutional rights."  *Id.*  The only decisions that can give such warning are those "of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court

of the state where the case arose." *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997).

The actions of a governmental official are deemed to have been committed within his "discretionary authority" whenever the official "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Responding to a traffic stop and making an arrest are all legitimate job-related functions within the discretionary authority of a municipal police officer. *See Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (holding that making an arrest is within the discretionary authority of a sheriff's deputy); *see also, e.g., Forrester v. Stanley*, 394 Fed. Appx. 673, 675 (11th Cir. 2010) ("There is no dispute that as a police officer responding to a traffic stop [defendant] was acting in his discretionary capacity.").

Thus, the burden shifts to plaintiff to show, for his unlawful search and seizure claim, that Baisden's actions violated a clearly established federal constitutional or statutory right. It is clear that the law at the time of the acts giving rise to the complaint prohibited the search of plaintiff's vehicle, given the factual allegations of the complaint. The finding at this stage that Baisden is not entitled to qualified immunity with regard to the search and seizure claim does not bar him from re-raising

the issue of qualified immunity at a later stage in the litigation, after further factual development.

Therefore, Baisden's motion to dismiss Count One is due to be denied.

### 3.    Counts Two and Three

Plaintiff alleges that Baisden is liable under 42 U.S.C. § 1983 and state law for false arrest and imprisonment.  A claim for false imprisonment will not lie when officers have arguable probable cause for arrest.  *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 741-42 (11th Cir. 2010); *Upshaw v. McArdle*, 650 So. 2d 875, 878 (Ala. 1994).  However, given the allegations in the complaint, the court cannot say at this time that Baisden had probable cause to arrest plaintiff.

Baisden has claimed qualified immunity with respect to the § 1983 claim for false arrest and false imprisonment.  However, as discussed above, the law was clearly established that an arrest not based on probable cause, or based on evidence obtained by an illegal search and seizure, would violate an individual's constitutional rights.  Given the factual allegations of the complaint, the court finds that Baisden has not established entitlement to qualified immunity.  The finding at this stage that Baisden is not entitled to qualified immunity with regard to the search and seizure claim does not bar him from re-raising the issue of qualified immunity at a later stage in the litigation, after further factual development.

Baisden also has claimed state-agent or discretionary function immunity with respect to the state law claim for false arrest and imprisonment. Alabama law provides that municipal police officers are entitled to immunity from tort liability under the following circumstances:

> Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, . . . and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, *and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.*

*Ala. Code* § 6-5-338(a) (1975) (emphasis supplied). The Alabama Supreme Court restated the rule governing state-agent immunity in a plurality decision in *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000):

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> (1) formulating plans, policies, or designs; or
>
> (2) exercising his or her judgment in the administration of a department or agency of government . . .

. . .

(4) exercising judgment in the enforcement of criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; . . . .

*Id.* at 405 (emphasis in original). The plurality opinion in *Cranman* was subsequently modified in *Hollis v. City of Brighton*, 950 So.2d 300, 309 (Ala. 2006), to extend immunity to

(4)     exercising judgment in the enforcement of criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, *or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975.*

*Id.* at 309 (quoting *Cranman*, 792 So. 2d at 405) (emphasis in original to emphasize language added to the *Cranman* restatement).

Discretionary-function/state-agent immunity applies when the defendant claiming such immunity satisfies three elements of proof: (a) the defendant demonstrates that he was a peace officer on the date of the incident in question, and that he was (b) performing law enforcement duties, and (c) exercising judgment or discretion when doing so. *See Howard v. City of Atmore*, 887 So. 2d 201, 204 (Ala. 2003).

A burden-shifting analysis is employed when determining whether discretionary-function immunity applies. *See id*. at 205. The defendant bears the burden of showing that the plaintiff's "claims arise from a function that would entitle

[the defendant] to immunity." *Id.*; *see also Walker v. City of Huntsville*, 62 So.3d 474, 496-98 (Ala. 2010). "The burden then shifts to the plaintiff to show that one of the two categories of exceptions . . . recognized in *Cranman* is applicable." *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008). The two exceptions to immunity recognized in *Cranman* were stated as follows:

> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the state agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Cranman*, 792 So. 2d at 405 (emphasis in original).

The first element for the application of discretionary-function immunity in this case – that the defendant be a "peace officer" – is not disputed. *See Borders v. City of Huntsville*, 875 So.2d 1168, 1178 (Ala. 2003) ("As a police officer, [the defendant] qualifies as a peace officer for purposes of [discretionary-function immunity]."); *Howard*, 887 So.2d at 204 ("It is undisputed that Officer Byars[, a police officer,] was a law enforcement officer at the [relevant time] . . . . The first element is, therefore, satisfied.").

The second element is also satisfied because Baisden was performing law enforcement duties in stopping and arresting plaintiff. Enforcement of the criminal laws is a discretionary function. *See Cranman*, 792 So.2d at 405 (including within those actions for which officers have immunity "officers' arresting or attempting to arrest persons"); *House v. State*, 380 So. 2d 940, 941 (Ala. 1979) (holding that for immunity purposes law enforcement duties include the "detection and apprehension of criminals").

The third element, that the officer was exercising judgment or discretion in performing the law enforcement duty of stopping and arresting plaintiff and charging him with illegally possessing a firearm, is also satisfied in this case.

Because defendant has satisfied his burden of showing entitlement to discretionary-function immunity, the burden shifts to plaintiff to show that one of the exceptions to immunity applies. Plaintiff has alleged that Baisden violated Fourth Amendment law in searching the vehicle and basing his arrest of plaintiff on the gun found in the vehicle. He also has alleged that Baisden lied at the preliminary hearing, causing the judge to find probable cause, and subjected plaintiff to false arrest and imprisonment, malicious prosecution and outrage. Thus, plaintiff has satisfied his burden, at this stage when the facts as alleged in the complaint are taken as true, to show that Baisden acted "willfully, maliciously, fraudulently, in bad faith, beyond his

. . . authority, or under a mistaken interpretation of the law." Therefore, Baisden has not established his entitlement to state-agent immunity at this stage of the litigation.

Therefore, the motion to dismiss the claims for false arrest and false imprisonment in Counts Two and Three is due to be denied.

### 4. Counts Four and Five

Plaintiff alleges that Baisden is liable under 42 U.S.C. § 1983 and state law for malicious prosecution. This Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003); *accord Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008). "[A]lthough both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law." *Wood*, 323 F.3d at 882.

In order to prove malicious prosecution under § 1983, a plaintiff must establish "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (citing *Wood*, 323 F.3d at 881). As to the first prong, the constituent elements of the common law tort of

malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 882.[14]   The elements under Alabama law for the common-law tort of malicious prosecution are the same, except that they require only a "judicial proceeding" not a "criminal prosecution." *Delchamps, Inc. v. Bryant*, 738 So.2d 824, 831-32 (Ala. 1999).

As to the second prong, it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010); *Wood*, 323 F.3d at 882; *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).  Consequently, the existence of probable cause defeats a § 1983 malicious prosecution claim.  *Kjellsen*, 517 F.3d at 1237; *Wood*, 323 F.3d at 881-82; *Carey v. City of Fall River*, 870 F.2d 40 (1st Cir. 1989) ("Because there was no clear lack of probable cause, defendants cannot be held liable for violating plaintiff's substantive due process rights on a malicious prosecution theory.") (citation omitted).

---

[14]   "When malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state." *Wood*, 323 F.3d at 882 n.17.

"Probable cause" is defined as "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975) (internal quotation marks, parentheses, and citations omitted). "Probable cause exists when 'the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense.'" *Miller v. Harget*, 458 F.3d 1251, 1259 (11th Cir. 2006) (citing *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)).

Baisden also asserts he is entitled to qualified immunity from liability on the malicious prosecution claim. To receive qualified immunity, an officer need not have actual probable cause, but only "arguable" probable cause. *Brown*, 608 F.3d at 735; *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Kingsland*, 382 F.3d at 1232 (quotation marks omitted); *accord Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998); *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). "Indeed, it is inevitable that law enforcement officials will

in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Von Stein*, 904 F.2d at 579 (quotation marks and ellipses omitted); *see also Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." (quotation marks omitted)); *Montoute*, 114 F.3d at 184 ("Thus, the qualified immunity standard is broad enough to cover some 'mistaken judgment [ ]'. . . ."). The standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs. *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010).

Because the factual averments of the complaint do not disclose any probable cause for plaintiff's arrest, Baisden's motion to dismiss cannot be granted.[15] This inquiry is better suited to the summary judgment stage. Further, as discussed above, the law was clear that a malicious prosecution would violate an individual's constitutional rights. Therefore, Baisden has not show entitlement to qualified

---

[15] Defendants argue that the state court judge's finding of probable cause to arrest plaintiff for unlawful possession of a firearm renders his claims subject to dismissal. However, plaintiff has alleged that the finding of probable case was based on Baisden's perjured testimony. Baisden's testimony that plaintiff sped off after Baisden turned on his blue lights and that he was able to see the gun from the outside of the car, which plaintiff avers was false, would have been material to a finding of probable cause for the search and arrest. The complaint allegations do not support defendant's assertion that the search was a permissible inventory search. Thus, the state court's finding of probable cause does not create any presumption of probable cause at this juncture.

immunity at this stage of the litigation.  Further, plaintiff has satisfied his burden, at this stage when the facts as alleged in the complaint are taken as true, to show that Baisden acted "willfully, maliciously, fraudulently, in bad faith, beyond his . . . authority, or under a mistaken interpretation of the law."  Therefore, Baisden has not established his entitlement to state-agent immunity on plaintiff's state law malicious prosecution claim at this stage of the litigation.

Therefore, Baisden's motion to dismiss Counts Four and Five is due to be denied.

### 5.    Count Six

Plaintiff asserts a claim for outrage against defendant Baisden.  To establish outrage, plaintiff must show that (1) Baisden "either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from [his] conduct;" (2) the conduct in question "was extreme and outrageous;" and (3) the "conduct caused emotional distress so severe that no reasonable person could be expected to endure it."  *Stabler v. City of Mobile*, 844 So.2d 555, 560 (Ala. 2002). "By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Serv. Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1980).  Thus, "outrage is a very limited cause of action that is

available only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala. 1993).

In Alabama, the tort of outrage has been limited to three circumstances: "wrongful conduct in the family-burial context," "barbaric methods employed to coerce an insurance settlement," and "egregious sexual harassment." *Potts v. Hayes*, 771 So.2d 462, 465 (Ala. 2000).[16]   However, the Alabama Supreme Court has suggested that the tort of outrage may be actionable in cases also alleging malicious prosecution and false imprisonment, where the plaintiff has alleged that he suffered emotional distress (as plaintiff has in this case). *See Woodruff v. City of Tuscaloosa*, 101 So.3d 749, 755 (Ala. 2012).   In *Tinker v. Beasley*, 429 F.3d 1324 (11th Cir. 2005), the plaintiff contended defendants subjected her to outrageous conduct by arresting her and questioning her about a murder, after falsely telling her that her attorney had quit.   The plaintiff in *Tinker* was threatened with the death penalty but never charged, and she was released from custody after the perpetrator was caught. The Eleventh Circuit determined that the conduct, while "generally reprehensible," failed to support a claim of outrage because the officers were falsely informing Tinker

---

[16]   Defendant cites *Roddy v. City of Huntsville*, 580 Fed.Appx. 844, 851 (11th Cir. 2014), in which the Eleventh Circuit Court of Appeals has declined to add police conduct predicated on probable cause to the list of conduct which may support a claim for the tort of outrage.   However, because the facts as alleged in the complaint support a conclusion that there was no probable cause for the search, and thus the subsequent arrest, *Roddy* is not applicable in this analysis.

about her legal representation "with a view to accomplishing something within the bounds of their role as police officers." *Id.* at 1330, 1331.  It distinguished the case of *Woodley v. City of Jemison*, 770 So.2d 1093 (Ala.Civ.App. 1999), in which a police officer, who made obscene phone calls to and otherwise harassed a woman by way of knowledge he gained through being a police officer, was found to have committed outrage through abuse of the public trust  to act outside the bounds of his position.  It also distinguished the case of *McMillian v. Johnson*, 878 F.Supp. 1473 (M.D.Ala. 1995), in which a police officer was found to have acted outrageously where a pretrial detainee, charged with capital murder and later exonerated, had been temporarily held on death row for the purposes of coercing a confession.  The fact that the plaintiff in *Tinker* was never formally charged with murder and was kept at the county jail and only verbally threatened with the death penalty.

Given the apparent willingness of the Alabama Supreme Court to extend the reach of the tort of outrage to malicious prosecution and false imprisonment, and in circumstances where police officers abuse the public trust and act outside the bounds of their positions, the court cannot say at this juncture that plaintiff has failed to state a claim for outrage.  According to the complaint allegations, Baisden illegally searched plaintiff's vehicle and arrested him based on the fruits of the illegal search, then lied at the probable cause hearing.  Plaintiff was incarcerated for nine months

before being released upon dismissal of the charges, during which time he lost wages and ultimately his job.  Because the tort of outrage is an intentional tort, Baisden is not entitled to state agent immunity.  Therefore, Baisden's motion to dismiss Count Six is due to be denied.

## C.   Stephen D. Anderson

### 1.   Official Capacity Claims

Plaintiff does not dispute that any official capacity claims against Anderson are due to be dismissed, inasmuch as they are actually claims against the City of Tuscaloosa.  *See Monell, supra*; *Brown v. Neumann*, *supra*.  A suit against a public official in his official capacity is, in all respects other than name, treated as a suit against the local government entity he represents, assuming that the entity receives notice and an opportunity to respond.  *Kentucky v. Graham*, *supra*.  Therefore, the motion to dismiss of Anderson is due to be granted as to any claims in his official capacity.

### 2.   Count One

Anderson, in his official capacity, is named as a defendant in Count One. However, as discussed above, because the suit against Anderson in his official capacity is really a suit against the City of Tuscaloosa, Count One is due to be dismissed as to defendant Anderson.

### 3.    Counts Two and Three

The court is assuming plaintiff intended to name Anderson, in his individual capacity, as a defendant for his § 1983 and state-law false arrest and imprisonment claims.  However, plaintiff has made no allegations that Anderson was personally involved in his arrest or imprisonment.  The only allegation that could be construed as being made against Anderson in this regard is "the failure of the department to quickly remedy the situation" contained in Count Two; no such allegation is contained in Count Three.  There is no allegation that Anderson was aware of the contents of the dashcam video and yet allowed plaintiff to be arrested and imprisoned.  The complaint allegations are insufficient to state a claim against Anderson, individually, for false arrest and imprisonment.  Therefore, Anderson's motion to dismiss Counts Two and Three is due to be granted.

### 4.    Counts Four and Five

The court is assuming plaintiff intended to name Anderson, in his individual capacity, as a defendant for his § 1983 and state-law malicious prosecution claims. However, plaintiff has made no allegations that Anderson was personally involved in his prosecution.  The only allegation that could be construed as being made against Anderson in this regard is "the failure of the department to quickly remedy the situation" contained in Count Four; no such allegation is contained in Count Five.

There is no allegation that Anderson was aware of the contents of the dashcam video and yet allowed plaintiff to be prosecuted. The complaint allegations are insufficient to state a claim against Anderson, individually, for malicious prosecution. Therefore, Anderson's motion to dismiss Counts Four and Five is due to be granted.

### 5.    Count Six

The court is assuming plaintiff intended to name Anderson, in his individual capacity, as a defendant for his outrage claim. However, plaintiff has made no allegations that Anderson was personally involved. There also is no allegation of "failure of the department to quickly remedy the situation." The complaint allegations are insufficient to state a claim against Anderson, individually, for outrage. Therefore, Anderson's motion to dismiss Count Six is due to be granted.

### 6.    Count Seven

The only other count which clearly names Anderson as a defendant, in both his individual and official capacities is Count Seven. As discussed above, the suit against Anderson in his official capacity is really a suit against the City of Tuscaloosa; therefore, Count Seven is due to be dismissed against Anderson in his official capacity.

As discussed above, if this claim is asserted pursuant to 42 U.S.C. § 1983, the allegations are insufficient as a matter of law to state a claim for failure to supervise

or train.  If the claim is made pursuant to state law, the claim for negligent training or failure to train is barred by state-agent immunity.  Therefore, to the extent this claim is made against Anderson in his individual capacity, he is entitled to state-agent immunity, and this claim is due to be dismissed as against Anderson.

## CONCLUSION

The legal conclusions reached in this report and recommendation are based solely on the consideration of the motion to dismiss the original complaint under the applicable standards.  The court recognizes that an amended complaint and further development of the record after discovery, at the summary judgment stage, may yield different legal conclusions.

Based on the foregoing, it is RECOMMENDED that:

(1) the Motion to Dismiss of the City of Tuscaloosa be GRANTED as to Counts One, Two and Four and such claims be DISMISSED WITHOUT PREJUDICE to plaintiff's right to file an amended complaint correcting the deficiencies noted in this report and recommendation;

(2) the Motion to Dismiss of the City of Tuscaloosa be GRANTED as to Counts Three, Five and Six and such claims be DISMISSED WITH PREJUDICE;

(3) the Motion to Dismiss of the City of Tuscaloosa be GRANTED as to Count Seven, to the extent that such a claim is construed as being made pursuant to 42

U.S.C. § 1983, and such claim be DISMISSED WITHOUT PREJUDICE to plaintiff's right to file an amended complaint correcting the deficiencies noted in this report and recommendation;

(4) the Motion to Dismiss of the City of Tuscaloosa be GRANTED as to Count Seven, to the extent that such a claim is construed as being made pursuant to state law, and such claim be DISMISSED WITH PREJUDICE;

(5) the Motion to Dismiss of the City of Tuscaloosa be GRANTED as to all claims for punitive damages and such claims be DISMISSED WITH PREJUDICE;

(6) the Motion to Dismiss of Cary Baisden be GRANTED as to any claims against him in his official capacity and such claims be DISMISSED WITH PREJUDICE;

(7) the Motion to Dismiss of Cary Baisden be DENIED as to Counts One, Two, Three, Four, Five and Six;

(8) the Motion to Dismiss of Stephen D. Anderson be GRANTED as to any claims against him in his official capacity and such claims be DISMISSED WITH PREJUDICE;

(9) the Motion to Dismiss of Stephen D. Anderson be GRANTED as to Counts One and Six and such claims be DISMISSED WITH PREJUDICE;

(10) the Motion to Dismiss of Stephen D. Anderson be GRANTED as to Count Seven, to the extent that such a claim is construed as being made pursuant to 42 U.S.C. § 1983, and such claim be DISMISSED WITHOUT PREJUDICE to plaintiff's right to file an amended complaint correcting the deficiencies noted in this report and recommendation;

(11) the Motion to Dismiss of Stephen D. Anderson be GRANTED as to Count Seven, to the extent that such a claim is construed as being made pursuant to state law, and such claim be DISMISSED WITH PREJUDICE; and

(12) the Motion to Dismiss of Stephen D. Anderson be GRANTED as to Counts Two, Three, Four and Five and such claims be DISMISSED WITHOUT PREJUDICE plaintiff's right to file an amended complaint correcting the deficiencies noted in this report and recommendation.

Plaintiff should be allowed 21 days from the date of entry of a final order on defendants' motions to dismiss to file an amended complaint consistent with this report and recommendation and the court's final order on defendants' motions to dismiss.

## NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the

clerk of this court.  **Any objections to the failure of the magistrate judge to address any contention raised in the complaint also must be included.**  Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B 1982) (*en banc*), *overruled by Douglass v. United Service Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), *superseded by statute* Federal Magistrates Act, Pub.L. No. 111-16, 123 Stat. 1608 (codified as amended at 28 U.S.C. § 636(b)(1) (2009); *see Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing

only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

DONE this 24th day of August, 2015.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE