FILED
2017 Jun-29  AM 08:51
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

ANTONIO HEAD,            )
                               )
          Plaintiff      )
                               )
     vs.               )     Case No.  7:14-cv-01788-HNJ
                               )
CARY BAISDEN, et al.,    )
                               )
         Defendants   )

## REPORT AND RECOMMENDATION

Defendants City of Tuscaloosa, Sergeant Cary Baisden, and Chief Steven D. Anderson filed a Motion to Dismiss Amended Complaint. (Doc. 25). Plaintiff filed responses (Docs. 27 & 29), and defendants filed replies (Docs. 28 & 30). Based on the following analysis, the undersigned recommends the court GRANT the City of Tuscaloosa and Anderson's motion to dismiss and DENY Baisden's motion to dismiss.

## The Amended Complaint

The amended complaint (Doc. 20)[1] alleges the following facts. Plaintiff Antonio Head drove a vehicle in Tuscaloosa on January 13, 2013, which included a

---

[1] Plaintiff filed the amended complaint after the ruling on defendant's motion to dismiss plaintiff's original complaint. (*See* Doc. 13, Report and Recommendation; Doc. 19, Memorandum Opinion).

friend, Rakeem Evins, as a passenger.  Defendant Sergeant Cary Baisden, a police officer for the City of Tuscaloosa, turned off Hargrove Avenue onto 10th Avenue behind plaintiff and turned on the blue lights of his police car.  Plaintiff applied the brakes on his vehicle and turned onto the first possible side street off 10th Avenue, Meadow Lawn Drive.

After the vehicle stopped, Baisden instructed plaintiff to put his hands in the air, and plaintiff complied.  Another officer arrived, and Baisden directed that officer to retrieve Evins out of the car first.  After Evins exited the vehicle, Baisden pulled his gun, without provocation, and pointed the gun at plaintiff while plaintiff was still in the vehicle.  Baisden told plaintiff he would shoot him, and if plaintiff put his hands down it was going to "get bad."  Baisden then removed plaintiff from the car and asked plaintiff if he had any weapons; plaintiff replied he had a small knife in his pocket.  Baisden remarked at that point, "Don't reach or I'll put your face through the window."

Baisden then placed handcuffs on plaintiff, but he informed plaintiff he was not under arrest; rather, Baisden stated he was only detaining plaintiff.  The officers on the scene began peering through the plaintiff's car windows with flashlights.  After eight minutes, Baisden and another officer then opened the car doors to search the vehicle; after 30 seconds, Baisden stated he found a gun covered with a black

bandanna between the seats.  Officers arrested plaintiff and Evins and took them to the Tuscaloosa County Jail.

On October 10, 2013, Baisden testified at a probable cause hearing; plaintiff claims Baisden lied under oath because his testimony contrasted with the then unreviewed dash camera video from Baisden's police car.[2]  Based upon Baisden's allegedly perjured testimony, the presiding state court judge found probable cause to charge plaintiff with possession of a firearm by a person forbidden to do so.  The State transferred plaintiff to federal custody for prosecution under U.S. law.

In October 2013, federal prosecutors obtained the dash camera video from Baisden's patrol car; subsequently, the United States Attorney's Office filed a motion to dismiss the federal charge against plaintiff.  On October 18, 2013, United States District Judge L. Scott Coogler granted the motion to dismiss and ordered plaintiff released immediately.  The criminal charges in Tuscaloosa County were no billed. Plaintiff claims that due to the illegal search and Baisden's perjury, plaintiff remained in the county jail from January 13 to October 21, 2013, over nine months.   At the

---

[2] Plaintiff avers Baisden falsely testified plaintiff sped up and traveled about an eighth of a mile before pulling over.  Plaintiff avers Baisden also falsely testified, "After we removed the – both occupants from the vehicle, I actually could see the gun before I ever asked them anything about it. And once we got them out, detained them, then I asked who – who the gun belonged to."  Plaintiff claims Baisden falsely testified he questioned plaintiff about the gun before entering the car.

time of his arrest, plaintiff worked for Coyle Industries, but he lost nine months of wages, as well as his job.

In the Amended Complaint, plaintiff includes averments that allegedly demonstrate the city's liability for plaintiff's claims.  On February 21, 2012, a newspaper article quoted defendant Anderson as stating he did not agree that persons should be allowed to carry weapons openly, and he instructed Tuscaloosa police officers to challenge anyone openly carrying a weapon to ensure they were permitted by law to have a weapon.

In 2012, defendant Anderson created "Charlie Detail," and the tactics of the officers assigned to this detail resulted in complaints from citizens, attorneys, the Tuscaloosa Public Defender's Office, and local judges.  Anderson temporarily disbanded "Charlie Detail" in 2014, but he did not fire any of the officers in the detail for their participation in incidents leading to complaints.

Plaintiff includes allegations about incidents and arrests of other persons by unspecified Tuscaloosa police officers which took place in January, July, and November 2015.  In the January 8, 2015 incident, Tuscaloosa police officers set up a sting in which an officers posing as a postal worker passed drove past Barado Jones, who was sitting on a porch, and delivered a package at a house around the corner from Jones's residence.  When Jones backs his car out of his driveway five minutes

afterward, officers pull Jones from the vehicle, search the vehicle, and arrest him.  A state court dismissed Jones's charges due to the lack of probable cause for his arrest.

In a July 10, 2015, incident, Tuscaloosa police officers apprehended Anthony Ware after he fled from police.  The officers applied a chemical spray to Ware upon apprehension, and Ware allegedly died from the exposure as the officers believed he feigned adverse effects from the spray.

In the third, November 8, 2015, incident, the plaintiff recounts a "well-documented" incident where Tuscaloosa police officers on the "Strip Detail" "illegally pulled" three students out of an apartment, beat and tasered one of them, and arrested all three.  The plaintiff reproduces a November 9, 2015, statement by defendant Anderson regarding the incident with the three students:

> [F]or me personally, when we have a situation like this, I take it personal, and I wonder in my own self, as a leader, have I failed my department in some type of way?  Have I not provided them with the adequate training that they need?  And so, as a result of this, we will be taking a look at our training protocols, and we will be doing additional training on everything from deescalating events to Fourth Amendment search and seizure.  So, there are a lot of things that are going to be learned from this situation.  There are going to be some changes made because ultimately I am responsible for what happens in the department and I take that very personally when something happens within my department and with my officers.  It creates a black eye on the department and the city of Tuscaloosa.

(Doc. 20 at ¶ 29).

Plaintiff asserts causes of action for unlawful search and seizure, in violation of the Fourth Amendment and 42 U.S.C. § 1983,[3] against Baisden and the City of Tuscaloosa (Count One); false arrest and false imprisonment, in violation of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983, against Baisden, Anderson, and the City of Tuscaloosa[4] (Count Two); false arrest and false imprisonment, in violation of *Ala. Code* § 6-5-170, against Baisden[5] (Count Three); malicious prosecution, in violation of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983, against Baisden, Anderson, and the City of Tuscaloosa[6] (Count Four); malicious prosecution, in violation of *Ala. Code* § 12-19-271, against Baisden[7] and

---

[3] In various counts, including Count One, Plaintiff cites "28 U.S.C. § 1983," but these cites obviously comprise scrivener's errors.

[4] Under the "Parties" section of the complaint, plaintiff states that Anderson is a defendant as to Count Two. (Doc. 20 at ¶ 5.b). However, within Count Two, plaintiff states that he brings the claim against Baisden and the City of Tuscaloosa. (*Id.* at ¶ 43). Nevertheless, because plaintiff mentions defendant Anderson within Count Two and includes Anderson as a defendant in Count Two earlier in the complaint, the undersigned considers Anderson as a defendant as to Count Two.

[5] Under the "Parties" section of the complaint, plaintiff states that Anderson is a defendant as to Count Three. (Doc. 20 at ¶ 5.b). However, within Count Three, plaintiff states he brings the claim against Baisden (*id.* at ¶ 51), complains about the actions of defendant Baisden only, and makes no mention of Anderson. Therefore, the undersigned does not construe Count Three as making a claim against Anderson.

[6] Under the "Parties" section of the complaint, plaintiff states that Anderson is a defendant as to Count Four. (Doc. 20 at ¶ 5.b). However, within Count Four, plaintiff states that he brings the claim against Baisden and the City of Tuscaloosa. (*Id.* at ¶ 61). Nevertheless, because plaintiff mentions defendant Anderson within Count Four and includes Anderson as a defendant in Count Four earlier in the complaint, the undersigned considers Anderson as a defendant as to Count Four.

[7] Under the "Parties" section of the complaint, plaintiff states that Baisden is a defendant as to Count Five. (Doc. 20 at ¶ 5.a). Further, while plaintiff states within Count Five that he brings the

Anderson (Count Five); outrage against Baisden (Count Six); and failure to supervise and failure to train, in violation of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983, against Anderson and the City of Tuscaloosa (Count Seven).

## STANDARD OF REVIEW

Rule 12(b)(6), Federal Rules of Civil Procedure, permits a court to dismiss a complaint if fails to state a claim for which relief may be granted.  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court revisited the applicable standard governing Rule 12(b)(6) motions to dismiss.  First, courts must take note of the elements a plaintiff must plead to state the applicable claims at issue.  *Id*. at 675.

After establishing the elements of the claim at issue, the court identifies all well-pleaded, non-conclusory facutal allegations in the complaint and assumes their veracity.  *Id*. at 679.  Well-pleaded factual allegations do not encompass mere "labels and conclusions," legal conclusions, conclusory statemetns, or formulaic recitations and threadbare recitals of the elements of a cause of action.  *Id*. at 678 (citations omitted).  In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in plaintiff's favor.  *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

---

claim against Anderson (*id.* at ¶ 68), the remainder of the allegations in Count Five mention Baisden. Therefore, the undersigned considers Baisden as a defendant as to Count Five.

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements. *Iqbal*, 556 U.S. at 678.   Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"   and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense." *Id*. at 678, 679 (citations omitted).   The plausibility standard does not equate to a "probability requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are "merely consistent with a defendant's liability." *Id*. at 678, 679 (citations omitted).

Pursuant to *Iqbal*'s approach, the undersigned will examine each cause of action to determine whether the plaintiff has pleaded sufficient facts to state a plausible claims against the defendants.

### DISCUSSION

### A.   Counts One & Seven - Unlawful Search and Seizure

In accordance with *Iqbal*, Rule 12(b)(6) review commences with establishing the elements of the claim at issue.   As stated previously, Count One avers a 42 U.S.C. § 1983 claim for a Fourth Amendment, unlawful search-and-seizure violation.

The Fourth Amendment protects individuals from unreasonable searches and seizures: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." "The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government, without regard to whether the government actor is investigating crime or performing another function." *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 755-56 (2010) (citations omitted).

In Count One, the plaintiff avers an unlawful search and seizure under the Fourth Amendment.  These comprise separate claims warranting separate legal standards.  A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (citations and emphasis omitted). As an initial matter, law enforcement officers may effect warrantless arrests "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citations omitted). Furthermore, "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' . . . ." *Whren v. United States*, 517 U.S. 806, 809 (1996).  Moreover, government seizures encompass more than restraints upon the body, as a traffic stop

constitutes a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

Under *Terry v. Ohio*, an officer's actions during such seizures must be "reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. 1, 20 (1968). Furthermore, the duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop. *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999). The traffic stop may not last "any longer than necessary to process the traffic violation" unless there is articulable suspicion of other illegal activity. *United States v. Holloman*, 113 F.3d 192, 196 (11th Cir. 1997). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

As for plaintiff's search claim, the Fourth Amendment "generally requires a law enforcement officer to have probable cause for conducting a search." *Safford United School Dist. v. Redding*, 557 U.S. 364, 370 (2009). "Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of

reasonable caution in the belief that an offense has been or is being committed . . . and that evidence bearing on that offense will be found in the place to be searched." *Id*. (citations and internal alterations omitted).   The probable cause standard's knowledge component generally requires a "fair probability" or a "substantial chance" of discovering evidence of criminal activity.  *Id*. at 371 (citations omitted).

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions."  *Arizona v. Gant*, 556 U.S. 332, 338 (1999) (citation omitted).  One exception potentially incites the circumstances at bar: searches incident to a lawful arrest.   *Id*.   In such circumstances, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  *Id*. at 351.  "When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies."   *Id*.   There exist other circumstances where officers may search vehicles that are inapplicable here (i.e., inventory searches, safeguarding property, protecting public from weapon,

determining ownership, etc.); thus, the circumstances here required probable cause other than a search incident to a lawful arrest.

### 1. City of Tuscaloosa

The plaintiff averred his Fourth Amendment search and seizure claims against defendant Baisden and the City of Tuscaloosa.  In applying the foregoing Rule 12(b)(6) and Fourth Amendment  principles, the undersigned reviews the plaintiff's claim against the City of Tuscaloosa first.

Under § 1983, a court may not hold a municipality "liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Local governmental entities fall prey to § 1983 when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Id.* at 694.  Accordingly, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

a.    *Anderson as Policymaker*

As an initial matter, the City contends plaintiff has failed to allege Anderson was a policymaker for the City.  "Only those officials who have final policymaking authority may render the municipality liable under § 1983."  *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (plurality opinion)).  "[S]tate and local positive law" determine whether a particular official has final policymaker authority for § 1983 purposes.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

The Supreme Court discussed the individual policymaker route to municipal liability in *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988), and *Pembaur*, 475 U.S. at 481.  In those cases, the Court explored the scope of this theory of liability and concluded a city is responsible for any actions taken by the particular official who "possesses final authority to establish municipal policy with respect to the action ordered."  *Pembaur*, 475 U.S. at 481.  In other words, a municipal official who has "final policymaking authority" in a certain area of the city's business may, by his or her action, subject the government to § 1983 liability when the challenged action falls within that authority.  "[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."  *Id*. at 480.  "If the authorized policymakers approve a subordinate's decision and the basis for it,

their ratification would be chargeable to the municipality because their decision is final." *Praprotnik*, 485 U.S. at 127.

Plaintiff identified Anderson as the ultimate decision maker for the alleged policy at issue. (Doc. 20 at ¶¶ 32, 42, 59, 80). Anderson admitted he is a final policymaker for the Tuscaloosa Police Department in his November 2015 press conference by stating, "ultimately I am responsible for what happens in the department." (Doc. 20 at ¶ 29). Further, Tuscaloosa Ordinance Chap. 2, Art. VIII, § 2-100(4) provides "[t]he duly appointed chief of police shall be the head of the police department." Thus, the complaint alleges sufficient facts to withstand the City's motion to dismiss on the basis that Anderson was not a policymaker for the City. *See, e.g., Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991) (complaint allegations that police chief was ultimate decision maker sufficient to survive city's motion to dismiss).

Defendants argue that the City Council was the final policymaker under state law. Under Alabama law, final policymaking authority rests with the City Council and the Mayor. *See Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994). However, the City Council and Mayor can delegate that authority. *See generally Praprotnik*, 485 U.S. at 124 (stating that municipalities may delegate authority to make policy). A municipal official does not function as a final

policymaker when higher authorities may meaningfully review and reverse his or her decisions. *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997) (holding that a city manager and his subordinate were not final policymakers regarding plaintiff's termination because a civil service board possessed authority to review the termination). At this stage of the litigation, the court must accept as true plaintiff's allegation that Anderson is a policymaker as to the City's law enforcement matters. There is no evidence the City Council and Mayor may override Anderson's decisions on law enforcement matters. Thus, the issue of final policymaking authority remains an open question. However, the court need not decide whether Anderson truly wields final policymaking authority in light of the discussion which follows.

> b. *Policy or Custom*

Even if Anderson qualifies as a policymaker, the court still must discern whether the plaintiff averred facts sufficient to establish a plausible claim of municipal liability, that is, a plausible policy or custom that caused plaintiff's injuries. Critical in the assessment, 'policy' and 'custom' do not constitute interchangeable legal terms. *See Monell v. Dept. of Soc. Scvs. of the City of New York*, 436 U.S. 658, 690, 691 (1978) (Section 1983 proscribes a local governmental entity's unconstitutional, "policy statement, ordinance, regulation, or decision officially

adopted and promulgated" by the entity's officers, but it also proscribes "governmental 'custom' even though such a custom has not received formal approval through the [entity's] official decisionmaking channels."). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "[A] municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (citations omitted).

To establish that a city has a custom, the plaintiff must show "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown*, 923 F.2d at 1481 (citing *Monell*, 436 U.S. at 690); *Sewell*, 117 F.3d at 489 ("A custom is a practice that is so settled and permanent that it takes on the force of law.").

For both policies and customs, a plaintiff must "also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the

requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

There exist even further gradations of the term "policy" for municipal liability purposes. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 553 U.S. 51, 61 (2011). In addition, a municipality's failure to train its officers about the constitutional duty to avoid infringing persons' rights may constitute a policy under § 1983. *Id*. at 62. A "municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id*. (citations and internal alterations omitted).

The Supreme Court recognizes two types of failure-to-train theories that represent municipal policy. In one type, a city's "continued adherence" to a training regimen that it knows or should know causes a "pattern of similar constitutional violations" by it employees evinces "the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id*. at 62 (citations omitted). As for the second type, "in a narrow range of

circumstances" a single incident, rather than a pre-existing pattern of violations, may support a failure-to-train claim, but only where the putative necessity to train is "obvious." *Id*. at 63. These "patently obvious" circumstances arise in frequently-occurring situations involving a high "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," such as the use of deadly force when apprehending fleeing suspects. *Id*. In such circumstances, a city's decision not to train officers about constitutional limits in such situations amounts to "deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights." *Id*. at 63-64.

Given the foregoing Rule 12(b)(6) standard, the Fourth amendment standards, and the municipal liability custom or policy standard, the undersigned finds that plaintiff has not averred a plausible claim that the City of Tuscaloosa maintained a policy or custom that caused the alleged Fourth Amendment violations. First, the plaintiff's recitation of Anderson's 2012 "challenge" to individuals who openly carry firearms does not constitute a policy germane to the proper procedure for traffic stops. That Anderson effected this policy, ostensibly to interdict felons inappropriately carrying firearms (Doc. 20 at ¶ 6), bears minor influence on the police department's policy for conducting traffic stops. That is, one may not reasonably infer the

detention policy regarding open carrying of firearms extends to the stopping and searching of automobiles.

The plaintiff's averments regarding the "Charlie Detail" suffer from the infirmities proscribed in *Iqbal*. *See* 556 U.S. at 680-81 (respondent's averments that petitioners "knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest" did not state a plausible claim) (internal marks and alterations excluded). The plaintiff declares that citizens, attorneys, the Tuscaloosa Public Defender's Office, and local judges complained about the "Charlie Detail's" use of fear, intimidation, prolonged interrogation, trespass and destruction of property, and lies. These averments amount to conclusory allegations, not well-pleaded facts. Well-pleaded facts require more details about the "Charlie Detail's" supposed transgressions, not unadorned averments that officers engaged in conduct that purportedly violate constitutional rights.[8]

The three other police encounters plaintiff describes in his Amended Complaint similarly fail to evince a policy or custom. One of the incidents involved a Fourth

---

[8] Indeed, the undersigned notes that local media reports the creation of the "Charlie Detail" as far back as 2001, which contravenes plaintiff's assertion that Anderson created the detail in 2012. *Tuscaloosa Police Academy Back in Business*, TUSCALOOSA NEWS, Jan. 17, 2001, *available at* http://www.tuscaloosanews.com/news/20010117/tuscaloosa-police-academy-back-in-business.

Amendment search and seizure violation; the other two incidents involved claims of use of excessive force, which plaintiff does not claim.  Prior case law generally portrays this number of incidents do not evince a custom or policy.  *See Whittier v. City of Sunrise*, 395 Fed.Appx. 648, 650 (11th Cir. 2010) (rejecting custom and policy claim in which plaintiff identified three prior instances of police officers failing to knock and announce, holding "Three violations do not a custom make."); *Burnette v. Ciolino*, 750 F. Supp. 1562, 1564-65 (M.D.Fla. 1990) (five incidents of police shootings insufficient to establish police custom under § 1983); *Graddy v. City of Tampa*, 2014 WL 272777, at *8 (M.D.Fla. Jan. 23, 2014) (four prior taser usage incidents inadequate).

On further analysis, the failed sting leading to Jones' arrest (Doc. 20 at ¶ 26), the fatal application of chemical spray to fleeing-suspect Ware (*id.* at ¶ 27), and the forceful apprehension of three students (*id.* at ¶ 28) do not indicate a particular decision adopted by the City (policy) or a permanent, well-settled practice (custom). These disparate incidents, even coupled with plaintiff's allegations of his own circumstances, do not comprise a plausible claim that the City maintained or ratified a conscious policy or custom that deprive persons of Fourth Amendment rights.  The circumstances underlying the four incidents diverge too widely to support recognition of a uniform, unconstitutional approach to engagement with the public.  *See Depew*

*v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy.").

Plaintiff's failure-to-train claim suffers the same outcome. Of course, the incidents regarding Jones, Ware, and the three students may not sustain plaintiff's failure-to-train theory because they all occurred in 2015, more than two years after plaintiff's encounter. To establish that a municipality was on notice of a pattern of constitutional violations evincing a failure to train, the presence of similar occurrences must arise at or before a plaintiff suffered his or her encounter. *See Smith v. City of Huntsville*, 2016 WL 572467, at *7 (N.D.Ala. Sept. 30, 2016) (denying the existence of a policy where the plaintiff failed to aver other encounters that occurred before the plaintiff's encounter with police); *Scott v. City of Lanett*, 845 F.Supp. 815, 820 (M.D.Ala. 1993) ("Incidents that occurred after Scott was arrested are not relevant to prove the policies that existed at the time in question.").

In the same manner, plaintiff's incident does not indicate an obvious failure-to-train claim. Indeed, the plaintiff does not even aver that the City failed to train its officers on the constitutional rights of persons regarding traffic stops. Plaintiff relies upon the pattern-or-practice theory of a failure-to-train claim, not the "rare" occasions in which a defendant failed to train its officers for obvious encounters with the public that present "highly predictable" risks of unconstitutional conduct. Indeed, under the

averred facts it is equally consistent that defendant Baisden's alleged duplicity regarding the stop's circumstances denote a violation of training, not a lack of training regarding obvious, unconstitutional risks. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 567 (2007) (plaintiffs failed to aver plausible claims because allegations of parallel business conduct is equally consistent with unlawful antiturst behavior and lawful free market behavior). In those circumstances, plaintiff's policy or custom claim fails the plausibility standard.

Finally, plaintiff's citation to Anderson's remarks after the seizure of the three students do not evince a conscious policy or a failure to train. Not only does this averment suffer the same temporal infirmity identified above (that is, the remarks occurred almost three years after plaintiff's encounter), at best it involves a policy that is only tangentially related to plaintiff's incident. Allegations of excessive force against three students due to a noise complaint at an apartment do not cohere into a conscious policy to deprive persons of Fourth Amendment rights at traffic stops. Further, Anderson's remarks regarding the desire to revisit training due to the incidents with the three students do not support allegations that the City knew, or should know, that it had a pattern of unconstitutional misconduct regarding traffic stops that evinced a failure to properly train its officers.

Based on this analysis, the undersigned concludes that plaintiff insufficiently avers a custom or policy on the part of the City of Tuscaloosa, and thus recommends dismissal of the plaintiff's Fourth Amendment search and seizure claims against the City.

2.    Defendant Baisden

Defendant Baisden seeks dismissal of Count One against him for failure to state a claim.  At the outset, the undersigned notes Baisden made the same arguments for dismissal of the original complaint.  Magistrate Judge Harwell Davis rejected those arguments, and the district court agreed with Magistrate Judge Davis' analysis in denying Baisden's motion to dismiss.

Under the doctrine of the "law-of-the-case," a court ruling on an issue in a case continues as the law of that case, whether correct or not, "so long as the facts on which the decision was predicated continue to be the facts of the case." *Commercial Union Ins. Co. v. SEPCO Corp.*, 300 F.Supp.2d 1198, 1201 (N.D.Ala. 2004).  An exception to the law-of-the-case doctrine allows a court to "revisit prior decisions of its own . . . in any circumstance, although as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (citations omitted).  This exception to the

doctrine applies to legal errors. *Id.* Stated another way, "in a close case, a court must defer to the legal conclusion of a coordinate court in the same case; only when the legal error is beyond the scope of reasonable debate should the court disregard the prior ruling." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1370-71 (11th Cir. 2003). Thus, courts must rarely invoke this exception. *Id.* at 1370.

The courts have not decided any intervening cases on Fourth Amendment search-and-seizure standards that call into question the prior determination upheld by the Court: defendant Baisden must proceed to litigation on this claim. In an abundance of caution, the undersigned will review this claim pursuant to the Rule 12(b)(6) standard.

In the Amended Complaint, there exists no allegation identifying the reasons for Baisden's stop of plaintiff's vehicle. Indeed, plaintiff alleges Baisden pulled over plaintiff's vehicle "without probable cause" (Doc. 20 at ¶ 39) and detained plaintiff and searched his vehicle "without a discernable reason to do so" (*id.* at ¶ 34). In *Jones v. Cannon*, 174 F.3d 1271 (11th Cir. 1999), the Eleventh Circuit upheld the denial of summary judgment on the plaintiff's claim that the defendant falsely arrested him on a traffic violation without arguable probable cause. The appellate court stated, "If the jury believed Jones's version of the events, Powers issued a traffic citation to Jones for following Powers's vehicle too closely when Powers knew

Jones had not done so and that there was no arguable probable cause for the traffic stop and traffic citation." *Id.* at 1292. Plaintiff's allegations in the case at bar, that Baisden stopped plaintiff without any reason to do so, sufficiently track the allegations in *Jones*. *See United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995) ("the fact that police handcuff the person . . . does not, as a matter of course, transform an investigatory stop into an arrest."). Plaintiff alleged that when he saw the blue lights on Baisden's police car, he applied his brakes and immediately pulled off 10th Avenue onto the first possible side street in a residential area. The act of a motorist in braking and immediately pulling over to a side street when blue lights are activated does not provide a proper basis for a traffic stop. Therefore, Baisden has not demonstrated that the claim for an unlawful stop should be dismissed.

As for the claims involving Baisden's placing of plaintiff in handcuffs and the subsequent search of plaintiff's vehicle, under the pleaded facts Baisden determined plaintiff had a small knife in his pocket. Yet, Baisden informed plaintiff he was not under arrest. Baisden then looked through the windows of the vehicle before finally opening the vehicle door and finding a gun under a black bandanna, all without a warrant.[9] At this point, according to the complaint, Baisden placed plaintiff under arrest; that is, the arrest allegedly occurred after the search.

---

[9] Though Baisden testified at the preliminary hearing that he was able to view the gun from outside the vehicle, plaintiff has alleged that Baisden testified falsely.

Page 25 of 47

Therefore, plaintiff alleged Baisden informed him he was not under arrest prior to the search of the vehicle. While plaintiff was in handcuffs, that does not necessarily equate to an arrest, as defendant argues. It may be permissible for an officer to handcuff a person without actually arresting him, if the officer believes that such detention is necessary for protection. Nevertheless, that Baisden handcuffed plaintiff did not necessarily equate to arresting plaintiff, and, again, plaintiff alleged that Baisden informed him he was not under arrest. *See United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995) ("the fact that police handcuff the person . . . does not, as a matter of course, transform an investigatory stop into an arrest.").

As a result of these alleged facts, the warrantless search of plaintiff's vehicle may have violated the Fourth Amendment. The alleged facts do not indicate Baisden performed a search incident to a lawful arrest, principally because Baisden did not place plaintiff under arrest. *See Gant*, 556 U.S. at 351. Under the same reasoning, Baisden did not conduct a valid inventory search because, again, Baisden allegedly searched the vehicle before arresting plaintiff. *See Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976). To the extent Baisden conducted a search incident to a lawful *Terry* stop, the defendant allegedly did not possess a proper basis for conducting the traffic stop, as discussed above. *See Michigan v. Long*, 463 U.S. 1032, 1049-50 & n. 14 (1983) (officers may

"conduct area searches during investigative detentions . . . only when they have the level of suspicion identified in *Terry*").

Further, when Baisden conducted the search, plaintiff was already handcuffed and could not have gained control over any weapons and was not under arrest.  The factual allegations of the complaint do not support defendant's contention that he had probable cause to search plaintiff's vehicle.  Absent probable cause to search the vehicle, Baisden's search and subsequent discovery of the gun, which plaintiff alleges was not in plain sight, was not valid and therefore could not support plaintiff's arrest.

Even had Baisden placed plaintiff under arrest at the outset, plaintiff has alleged that Baisden had no probable cause to stop or arrest him.  Plaintiff alleges that Baidsen testified falsely that he saw the gun before opening the door to the vehicle.  Thus, taking plaintiff's allegations as true, as the court must at this juncture, Baisden could not have effected a lawful custodial arrest of plaintiff.

Baisden has claimed qualified immunity with respect to plaintiff's claims pursuant to 42 U.S.C. § 1983.  The doctrine of "qualified immunity" is a defense to a § 1983 claim, and provides "complete protection for governmental officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)).  As the Eleventh Circuit observed in *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002):

> The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, *see Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987), protecting from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001).

*Lee*, 284 F.3d at 1193-94; *see also, e.g., Chesser v. Sparks*, 248 F.3d 1117, 1121-22 (11th Cir. 2001).

A valid qualified immunity defense has three parts.  The defendant must first prove that he was acting within his "discretionary authority." *Lee*, 284 F.3d at 1194.  If the defendant makes that showing, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate by demonstrating (ii) the deprivation of a constitutional or federal statutory right (iii) that was clearly established when the defendant acted.  *See Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009).

While the determination of whether a federal constitutional or statutory right was violated depends on the right asserted, courts use a common standard to determine whether a right was "clearly established."

> For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell [v. Forsyth*, 472 U.S. 511,

> 535 n.12, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)]; but it is to say that
> in the light of pre-existing law the unlawfulness must be apparent."
> *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d
> 523 (1987).

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  A right is "clearly established" for

purposes of the doctrine of qualified immunity if an earlier court decision "gave

reasonable warning that the conduct then at issue violated constitutional rights." *Id.*

The only decisions that can give such warning are those "of the U.S. Supreme Court,

Eleventh Circuit Court of Appeals, or the highest court of the state where the case

arose." *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th

Cir. 1997).

A court may deem the actions of a governmental official to fall within his

"discretionary authority" whenever the official "was (a) performing a legitimate

job-related function (that is, pursuing a job-related goal), (b) through means that were

within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252,

1265 (11th Cir. 2004).  Responding to a traffic stop and making an arrest are all

legitimate job-related functions within the discretionary authority of a municipal

police officer.  *See Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004)

(holding that making an arrest is within the discretionary authority of a sheriff's

deputy); *see also, e.g., Forrester v. Stanley*, 394 Fed. Appx. 673, 675 (11th Cir. 2010)

("There is no dispute that as a police officer responding to a traffic stop was acting in his discretionary capacity.").

Thus, the burden shifts to plaintiff to aver, for his unlawful search and seizure claim, that Baisden's actions violated a clearly established federal constitutional or statutory right.  The prior analyses clearly portray applicable law prohibiting the warrantless search and seizure of plaintiff and his vehicle without probable cause. Given the factual allegations of the complaint, the finding at this stage that Baisden is not entitled to qualified immunity with regard to the search and seizure claim does not bar him from re-raising the issue of qualified immunity at a later stage in the litigation, after further factual development.

Defendants cite *Black v. Wigington*, 811 F.3d 1259, 1267-68 (11th Cir. 2016), in which the Eleventh Circuit held the exclusionary rule does not apply in a civil suit against police officers.  The exclusionary rule, which bars the admission of evidence obtained in violation of the Constitution, extends beyond the direct products of police misconduct to evidence derived from the illegal conduct, or "fruit of the poisonous tree."  *Nardone v. United States*, 308 U.S. 338, 341(1939).  The exclusionary rule is a "judicially created remedy" meant to prevent violations of the Fourth Amendment "through its deterrent effect."  *United States v. Calandra*, 414 U.S. 338, 347-48 (1974).  Thus, in *Black*, a § 1983 suit against police officers, the Eleventh Circuit

determined the defendants could rely on evidence they found during an illegal search to prove they had probable cause for arrest warrants for the plaintiffs. The appellate court held that the evidence warranted dismissal of the plaintiffs' malicious prosecution claim on summary judgment. *See also Wright v. Watson*, 209 F.Supp.3d 1344 (M.D.Ga. 2016) (applying *Black* to grant summary judgment on false arrest and malicious prosecution claims). However, in *Wright*, the district court stated that, notwithstanding *Black*'s holding, "[t]he relevant question is whether a reasonable officer 'in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'" *Id.* at 1368, citing *Carter v. Butts County, Georgia*, 821 F.3d 1310, 1319-20 (11th Cir. 2016) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

An officer has arguable probable cause to arrest "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Anderson*, 483 U.S. at 641 (citations and internal quotation marks omitted). To determine whether an officer had arguable probable cause, a court asks "'whether the officer's actions are objectively reasonable . . . regardless of the officer's underlying intent or motivation.'" *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (quoting *Vaughan v. Cox*, 264 F.3d 1027, 1036 (11th Cir. 2001)). This standard does not shield officers who

unreasonably conclude that probable cause exists. *Skop v. City of Atlanta, Georgia*, 485 F.3d 1130, 1137 (11th Cir. 2007).   Where an officer arrests without even arguable probable cause, he violates the arrestee's clearly established Fourth Amendment right to be free from unreasonable seizures. *See Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009).  It was clearly established as of January 2013 that "falsifying facts to establish probable cause is patently unconstitutional." *Kings land v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004).

In this case, plaintiff alleges Baisden stopped him without probable cause and then searched his vehicle without probable cause.  Plaintiff also alleges the gun Baisden found in his vehicle was not visible from outside the vehicle because it was covered by a black bandanna.  Baisden testified he saw the gun before he opened the vehicle door, testimony which plaintiff claims was false and Baisden knew it was false.  The complaint sufficiently alleges that Baisden stopped plaintiff without probable cause; thus, Baisden's search of plaintiff's vehicle and his subsequent arrest of plaintiff for illegally possessing a gun violated his Fourth Amendment rights, under the facts as alleged.

Baisden claims Magistrate Judge Davis erred in accepting as true plaintiff's claim that Baisden told him he was not under arrest when Baisden handcuffed plaintiff, and further claims Magistrate Judge Davis should have determined as a

matter of law that Baisden had arrested plaintiff when Baisden handcuffed him. However, in ruling on a motion to dismiss, the court must accept plaintiff's recitation of well-pleaded facts as true. In addition, the district court adopted and accepted Magistrate Judge Davis' report and recommendation, which recommended that the court deny Baisden's motion to dismiss as to all counts. *See* Doc. 19. The court will determine whether Baisden had probable cause or arguable probable cause to stop plaintiff and search his vehicle, as well as whether he had arrested plaintiff at the time he handcuffed him, later in this litigation, after discovery and development of the record.

### c.    *Defendant Anderson*

The plaintiff avers the Count Seven, failure-to-train theory of Fourth Amendment liability against defendant Anderson in his individual capacity. (Doc. 20 ¶ 81). Based upon the facts alleged, Anderson did not participate in the plaintiff's traffic stop, detention, and search, and § 1983 does not permit *respondeat superior* liability. *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995) (*citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978), and *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993)). The law holds supervisory personnel accountable for the constitutional violations of their subordinates only upon proof that they (1) were directly involved in the wrongdoing; (2) failed to remedy a wrong after learning of

it through report or appeal; (3) created or allowed a policy under which the violation occurred; or (4) were grossly negligent in managing the subordinates who caused the wrongdoing. *Sanchez v. United States*, 2015 WL 854268, at *11 (N.D.Ala. Feb. 27, 2015), citing *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986).

To the extent one construes the Amended Complaint as averring the search and seizure claims against Anderson in his official capacity, such averments amount to claims against the City of Tuscaloosa, which the undersigned addressed previously. Therefore, the undersigned recommends dismissal of the search and seizure and failure-to-train claims against defendant Anderson.

**B.     Counts  Two and Four - False Arrest, False Imprisonment, and Malicious Prosecution Under Section 1983**

In Counts Two and Four, plaintiff invokes § 1983 to sue Baisden, Anderson, and the City for false arrest, false imprisonment, and malicious prosecution under the Fourth and Fourteenth Amendments.  The defendants seek dismissal of these claims in their Motion to Dismiss.  Pursuant to *Iqbal*'s guidance, the undersigned will establish the elements of these claims to determine whether plaintiff has averred plausible causes of action.

As the Supreme Court provides, Fourth Amendment claims for false arrest and false imprisonment overlap, such that a false arrest claim represents a species of false imprisonment. *Wallace v. Kato*, 549 U.S. 384, 388-89 (2007).  As the Court declared,

every confinement constitutes an imprisonment, "whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house." *Id*. at 389.  The Fourth Amendment's proscription of unreasonable seizures governs such false arrest/imprisonment claims. *See Ortega v. Christian*, 85 F.3d 1521, 1525, 1526 (11th Cir. 1996) (a "warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim" and "[w]here a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest"); *see also  Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir.2004) ("A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim.").  Indeed, the false arrest/false imprisonment claims merely constitute the unlawful seizure claim reviewed in Count One.

A recent Supreme Court case extends this conclusion to the Fourth Amendment malicious prosecution claim.  In *Manuel v. City of Joliet*, 137 S.Ct. 911 (2017), petitioner claimed that law enforcement officers unlawfully prolonged his detention for seven weeks after the onset of legal process, particularly by fabricating evidence in support of a probable cause complaint before a magistrate judge.  *Id*. at 915-16 & n.3.  The Court ruled that the Fourth Amendment governs all forms of pretrial

detention, regardless whether the detention precedes or follows legal process, such as an arraignment or hearing. *Id*. at 917-19. "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Id*. at 918. "That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Id*.

Notably, the Court acknowledged that this conclusion was already settled law in the Eleventh Circuit. *Id*. at 917, n.4 (citing *Whiting v. Traylor*, 85 F.3d 581, 584–586 (11th Cir. 1996)). Indeed, in *Whiting* the Eleventh Circuit concluded that "a 'malicious prosecution' can be a shorthand way of describing a kind of legitimate section 1983 claim: the kind of claim where the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment and injuries, due to that seizure, follow as the prosecution goes ahead." 85 F.3d at 584. The Eleventh Circuit elaborated, noting that "referring to a federal 'right' to be free from malicious prosecution is actually a description of the right to be free from an unlawful seizure which is part of a prosecution." *Id*. at 584 n.4. Therefore, all averments of pretrial detention without probable cause – whether termed illegal seizure, false arrest, false imprisonment, or

malicious prosecution – fall under the Fourth Amendment proscription of unreasonable seizures.[10]

Based upon this conclusion, plaintiff's claims in Counts Two and Four merely reflect unlawful detention – or unlawful seizure – claims that the undersigned reviewed under Count One.  To be sure, the Supreme Court in *Manuel* remanded the case to the lower courts to fashion the elements of an unlawful detention claim.  137 S.Ct. at 920.  That undertaking fades for the case at bar, as the Eleventh Circuit expounded further upon the Fourth Amendment malicious prosecution claim, finding that its sustenance requires "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures."  *Kings land*,  382 F.3d at 1234 (citing *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)).  "[A]lthough both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law."  *Wood*, 323 F.3d at 882.

---

[10] To the extent plaintiff avers a malicious prosecution claim under the Fourteenth Amendment's Due Process Clause, the Eleventh Circuit foreclosed that route. *Eloy v. Guillot*, 189 Fed.Appx. 339, 344 n.10 (11th Cir. 2008) (citing *Albright v. Oliver*, 510 U.S. 266, 275, 281, 286 (1994) (plurality)).

As to the first prong, the constituent elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 882.[11]  The elements under Alabama law for the common-law tort of malicious prosecution are the same, except that they require only a "judicial proceeding" not a "criminal prosecution." *Delchamps, Inc. v. Bryant*, 738 So.2d 824, 831-32 (Ala. 1999).  As to the second prong, one has already set forth that an arrest without probable cause constitutes an unreasonable seizure that violates the Fourth Amendment.  *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

In any event, whether false arrest, false imprisonment, and malicious prosecution claims collapse into one inquiry, or whether the malicious prosecution claims still incorporate additional elements, the prior analysis of Counts One and Seven presents the same results for Counts Two and Four.  As discussed above, plaintiff plausibly alleged Baisden had no probable cause to initiate a traffic stop in the first instance, and no probable cause to detain plaintiff or search his vehicle.  The possible additional elements whether Baisden continued a judicial proceeding without

---

[11]  "When malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state." *Wood*, 323 F.3d at 882 n.17.

probable cause with the termination of prosecution in plaintiff's favor presents no obstacle to the undersigned's findings.

Baisden also asserts he is entitled to qualified immunity from liability on the malicious prosecution claim. To receive qualified immunity, an officer need not have actual probable cause, but only "arguable" probable cause. *Brown*, 608 F.3d at 735; *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Kingsland*, 382 F.3d at 1232 (quotation marks omitted); *accord Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998); *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). "Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Von Stein*, 904 F.2d at 579 (quotation marks and ellipses omitted); *see also Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." (quotation marks omitted)); *Montoute*, 114 F.3d at 184 ("Thus, the qualified immunity standard is broad enough to cover some 'mistaken judgment

[ ]'. . . .").  The standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs.  *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010).

As discussed above, clearly established law provides that an arrest not based on probable cause, or based on evidence obtained by an illegal search and seizure, violates an individual's constitutional rights.  Because the factual averments of the Amended Complaint do not disclose any probable cause for plaintiff's arrest, the undersigned cannot recommend qualified immunity for Baisden on plaintiff's malicious prosecution, and even false arrest/false imprisonment, claims.[12]  This inquiry is better suited to the summary judgment stage.

As for the § 1983 false arrest, false imprisonment, and malicious prosecution claims against Anderson, plaintiff lodges no allegations that Anderson was personally involved in his arrest or imprisonment.  Plaintiff does not allege Anderson was personally involved in his arrest, or knew of the dash camera video, and yet allowed

---

[12] Defendants argue that the state court judge's finding of probable cause to arrest plaintiff for unlawful possession of a firearm renders his claims subject to dismissal.  However, plaintiff has alleged that the finding of probable cause was based on Baisden's perjured testimony.  Baisden's testimony that plaintiff sped off after Baisden turned on his blue lights and that he was able to see the gun from the outside of the car, which plaintiff avers was false, would have been material to a finding of probable cause for the search and arrest.  The complaint allegations do not support defendant's assertion that the search was a permissible search. Thus, the state court's finding of probable cause does not create any presumption of probable cause at this juncture.

plaintiff's arrest and detention. Therefore, plaintiff may not hold Anderson liable in an individual capacity for these claims.

As for the same claims against the City and Anderson in his official capacity, the preceding analyses regarding Counts One and Seven dispose of the plaintiff's contentions. Pursuant to those prior findings regarding the Counts One and Seven unlawful seizure claim – which, again, corresponds to the claims under the present counts – the Amended Complaint does not plausibly aver a policy or custom permitting unlawful detentions, false arrests, false imprisonments, or malicious prosecutions, including under any failure-to-train theories. Therefore, the undersigned recommends dismissal of Counts Two and Four against the City and Anderson in his official capacity.

### C.    Count Three - State Law False Arrest and False Imprisonment

Plaintiff alleges that Baisden is liable under state law for false arrest and imprisonment. A false arrest requires proof "that the defendant caused [plaintiff] to be arrested without probable cause." *Walker v. City of Huntsville*, 62 So.3d 474, 493 (Ala. 2010). "[F]or a detention to be valid, the officer must reasonably, and in good faith, suspect the individual detained of being involved in some form of criminality." *Walker*, 62 So.3d at 493. "Section 6-5-170, *Ala. Code* 1975, defines false imprisonment as 'the unlawful detention of the person of another for any length of

time whereby he is deprived of his personal liberty.'" *Walker*, 62 So.3d at 492.  A false arrest will support a claim of false imprisonment.  *Upshaw v. McArdle*, 650 So.2d 875 (Ala.1994).  As to false-arrest and false-imprisonment claims, "[p]robable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonable trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Walker*, 62 So.3d at 492 (internal quotation marks omitted).

In *Borders v. City of Huntsville*, 875 So.2d 1168 (Ala. 2003), the Alabama Supreme Court applied the standard of "arguable probable cause" in determining whether a police officer was immune from plaintiff's false-arrest claim pursuant to the immunity provided police officers in § 6-5-338(a).  Arguable probable cause exists "when an officer makes an arrest lacking probable cause if officers of reasonable competence in the same circumstances and with the same knowledge would disagree as to whether probable cause existed." *Borders*, 875 So.2d at 1179. *See also Kingsland*, 382 F.3d at 1232 (noting that arguable probable cause exists where "'reasonable officers in the same circumstances and possessing the same knowledge as the [arresting officer] could have believed that probable cause existed to arrest Plaintiff'").  Whether a police officer possesses probable cause or arguable probable cause to arrest an individual depends on the elements of the alleged offense

and the operative set of facts.  *Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th

Cir. 2010).

In the case at bar, plaintiff alleged that Baisden stopped him without probable

cause.  As discussed above, the undersigned construes plaintiff's allegations as true

and finds a plausible claim that Baisden lacked probable cause for plaintiff's arrest.

Baisden cannot defeat that claim on a motion to dismiss merely by arguing he did

have probable cause.  That court will determine whether probable cause indeed

existed after discovery, on a motion for summary judgment.

### D.    Count Five - State Law Malicious Prosecution

Plaintiff alleges that Baisden and Anderson are liable under state law for

malicious prosecution.  Baisden claims qualified immunity on this claim.  The

elements of a malicious prosecution claim are: "(1) that a prior judicial proceeding

was instituted by the present defendant, (2) that in the prior proceeding the present

defendant acted without probable cause and with malice, (3) that the prior proceeding

ended in favor of the present plaintiff, and (4) that the present plaintiff was damaged

as a result of the prior proceeding."  *Delchamps, Inc. v. Bryant*, 738 So.2d at 831-32.

As to the second prong, one has already set forth that an arrest without

probable cause constitutes an unreasonable seizure that violates the Fourth

Amendment.  *Crosby*, 394 F.3d at 1332.  The prior analysis of Counts One and Seven,

as well as Counts Two and Four, pertain to the analysis of Count Five. As discussed above, plaintiff plausibly alleged Baisden had no probable cause to initiate a traffic stop in the first instance, and no probable cause to detain plaintiff or search his vehicle. Because the factual averments of the Amended Complaint do not disclose any probable cause for plaintiff's arrest, the undersigned cannot recommend dismissal based on Baisden's claim of qualified immunity on plaintiff's malicious prosecution claim.

As for the malicious prosecution claim against Anderson, plaintiff lodges no allegations that Anderson was personally involved in his prosecution. Plaintiff does not allege Anderson was personally involved in his arrest, or knew of the dash camera video, and yet allowed plaintiff's arrest, detention, and prosecution. Therefore, plaintiff may not hold Anderson liable in an individual capacity for this claim.

As for the same claim against Anderson in his official capacity, the preceding analyses regarding Counts One, Seven, Two, and Four dispose of the plaintiff's contentions. Pursuant to those prior findings regarding Counts One, Seven, Two, and Four, the Amended Complaint does not plausibly aver supervisory liability against Anderson for malicious prosecution, including under any failure-to-train theories. Therefore, the undersigned recommends dismissal of Count Five against Anderson in his official capacity.

### E.    Count Six - Outrage

As discussed previously, the law-of-the-case doctrine precludes Baisden's re-assertion of his dismissal motion regarding plaintiff's Count Six outrage claim. Baisden does not cite any new legal developments; rather, he contends the undersigned's predecessor erroneously concluded the defendant arrested plaintiff before the vehicle search.  Based upon the foregoing analyses, the undersigned recommends the same conclusion: plaintiff averred plausibly that Baisden did not arrest plaintiff before the search.  Therefore, the undersigned recommends denial of Baisden's motion to dismiss the outrage claim.

CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS:

(1) the Court GRANT the motions to dismiss of defendants City of Tuscaloosa and Anderson and DISMISS plaintiff's claims against these defendants WITH PREJUDICE; and

(1) the Court DENY the motion to dismiss of defendant Baisden.

NOTICE OF RIGHT TO OBJECT

The parties may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection.  Failure to object to factual findings will bar later review of those findings, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

On receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the magistrate judge's findings of fact and recommendations.  The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

No party may appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  The parties may only appeal from a final judgment entered by a district judge.

DONE this 29th day of June, 2017.

 

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE