## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| ANTONIO HEAD, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 7:14-cv-01788-HNJ |
| | } |
| CARY BAISDEN, et al., | } |
| | } |
| Defendants. | } |

### MEMORANDUM OPINION

This case is before the court on the Magistrate Judge's June 29, 2017 Report and Recommendation (Doc. # 32) and Defendant Cary Baisden's Objections to the Report and Recommendation (Doc. # 33). Although Defendant Baisden has filed objections, he has not objected to the Report and Recommendation's description of the Amended Complaint. Accordingly, the court accepts and adopts that description for purposes of reviewing Baisden's objections.

**I.      Standard of Review**

The court reviews objected-to portions of a Magistrate Judge's report and recommendation *de novo*. *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989). The court reviews those portions that are not specifically objected to under the "clearly erroneous" standard. *See Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001).

## II. Analysis of Objections

After careful review, and for the reasons explained below, the court concludes that Baisden's objections are due to be sustained as to Plaintiff's outrage claim, but otherwise overruled.

### A. Objections to the Magistrate Judge's Analysis of Unlawful Search and False Arrest Claims

Defendant Baisden argues that the Amended Complaint contains a conclusory allegation that he stopped and searched Plaintiff's vehicle for no discernible reason. (Doc. # 33 at 4-5). Baisden insists that the Amended Complaint should have alleged the facts known to Baisden before conducting the traffic stop in order to state a plausible violation of clearly established Fourth Amendment law. (*Id.* at 5-6). Moreover, Baisden argues that the search can be justified or qualified immunity can be granted by considering several exceptions to the Fourth Amendment's warrant requirement. (*See id.* at 7-13). The court is not convinced by any of these objections.[1]

First, Plaintiff's Amended Complaint presents sufficient allegations of facts to support its contention that Baisden lacked a discernible reason for the traffic stop. Plaintiff alleges that he was driving with a friend in Tuscaloosa when Baisden turned on his blue lights to pull the vehicle over. (Doc. # 20 at ¶¶ 8-9). According to Plaintiff, he immediately pulled off of 10th Avenue onto a side street. (*Id.* at ¶ 9). Plaintiff states that Baisden lied during a probable cause hearing when he testified that (1) Plaintiff sped up and traveled an eighth of a mile before stopping, and (2) Baisden immediately observed a gun in the vehicle. (*Id.* at 3-4 nn. 3 & 4). Indeed, Plaintiff avers that Baisden examined the vehicle for eight minutes before entering it

---

[1] Because the Magistrate Judge's recommendations concerning the unlawful search and false arrest claims are due to be affirmed without consideration of the law of the case doctrine, the court need not discuss the contours of that doctrine here. The court addresses that objection further below.

without a warrant, an assertion that plausibly alleges Baisden tried and failed to find contraband in plain view to justify entering the vehicle. (*Id.* at ¶ 16). These allegations plausibly assert that Baisden lacked reasonable suspicion for an investigatory traffic stop. *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012) (describing the Fourth Amendment standards for an investigatory stop).

Second, Defendant Baisden incorrectly contends that Plaintiff must explicitly plead what was known by Baisden at the time of the traffic stop to proceed past the motion to dismiss stage. It is true that the court must consider the facts known to Baisden at the time of the stop to determine whether Baisden had arguable probable cause for the arrest. *See Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999). It does not follow, however, that a plaintiff is obligated to explicitly plead the facts a defendant "knew" to present a plausible unlawful search or false arrest claim. This is so because the court can plausibly infer that a police officer observed the events pled by a plaintiff in a complaint. So, if a plaintiff pleads that he followed all traffic laws and was nonetheless pulled over, a plausible inference is that the officer observed no traffic violation justifying a stop. That inference may be overcome by testimony or other evidence presented later in the case, but it is enough for the case to proceed to discovery.

Third, Plaintiff has plausibly alleged that Baisden's warrantless search occurred during an investigatory stop, not an arrest. Defendant Baisden insists that the warrantless search of Plaintiff's vehicle was permitted under numerous exceptions for searches incident to an arrest because Plaintiff had been arrested by the time of the search. (*See* Doc. # 33 at 7-13). There is not a brightline test distinguishing an investigatory stop from an arrest. *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995). The court must consider the degree of intrusion on the detainee's freedom to determine whether it constitutes an arrest. *Id.* Factors to be

considered include "the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts relied upon by the officers." *Id.*

While Plaintiff has stated that Baisden pointed a gun towards him and placed him in handcuffs, Plaintiff alleges that Baisden explicitly stated that he was not under arrest. (Doc. # 20 at ¶¶ 11-12, 14). Baisden insists that the stop must be construed as an arrest because he pointed a firearm at Plaintiff and directed him to put his hands in the air. (Doc. # 33 at 7). But this is not necessarily so. As the Eleventh Circuit clearly explained in *Blackman*, "the fact that police handcuff the person or draw their weapons does not, as a matter of course, transform an investigatory stop into an arrest." 66 F.3d at 1576. Indeed, the stop Plaintiff has alleged is very similar to the stop presented in *Blackman*, where officers handcuffed the defendants after they had voluntarily exited an apartment and one police officer allegedly pointed a gun at one defendant during the course of the investigatory stop. *Id.* at 1574. At this stage of the proceedings, the court cannot say that it is implausible that Baisden's stop of Plaintiff was an investigatory stop rather than an arrest.[2]

Finally, the court declines to address whether Defendant Baisden's search of the vehicle was justified by the automobile search exception to the Fourth Amendment's warrant requirement because Baisden raised that argument for the first time in his objections to the Report and Recommendation. Baisden did not argue in the pending Motion to Dismiss that the search was justified under the automobile search exception. (*See* Doc. # 25 at 7-10).

---

[2] Because Plaintiff has plausibly pled that Baisden searched the vehicle prior to Plaintiff's arrest, the Fourth Amendment standard for warrantless automobile searches incident to arrest from *Arizona v. Gant*, 556 U.S. 332, 351 (2009), cannot establish the constitutionality of the search at this stage of the proceedings. (*See* Doc. # 33 at 9-10). Likewise, Baisden's argument that the search was justified as an inventory search is wholly incorrect because the Amended Complaint indicates that the search occurred before Plaintiff's arrest and any subsequent impoundment of the vehicle. *Cf. United States v. Crawford*, 294 F. App'x 466, 472 (11th Cir. 2008) ("[A] warrantless inventory search of a legally impounded car conducted pursuant to an established procedure is valid under the Fourth Amendment.").

4

Consequently, the Magistrate Judge did not analyze whether the automobile search exception justified the search described in the Amended Complaint. (*See* Doc. # 32 at 26-27). Although the court has the authority to consider arguments raised for the first time in an objection to a report and recommendation, *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009), it declines to do so with respect to the automobile search exception because that issue was not addressed in the Magistrate Judge's Report and Recommendation and has not been sufficiently developed at this time.[3]

    **B.**  **Objection to the Magistrate Judge's Analysis of Malicious Prosecution Claim**

Baisden argues that the Magistrate Judge erred by determining that he lacked arguable probable cause for the arrest and detention of Plaintiff. (Doc. # 33 at 5-6, 13). Baisden also argues that nothing in the Amended Complaint suggests that he continued a criminal prosecution or judicial proceeding against Plaintiff.[4] (*Id.* at 13). With regard to the state-law malicious prosecution claim, Baisden insists that he is entitled to state-law immunity. (*Id.* at 14). All of these objections are due to be overruled.

"To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her

---

[3] In any event, it is likely that Plaintiff has plausibly alleged Baisden's lack of probable cause to believe that the vehicle contained evidence of a crime. *Cf. United States v. Ross*, 456 U.S. 798, 799-800 (1982) (explaining the scope of the automobile search rule established in *Carroll v. United States*, 267 U.S. 132 (1925)). According to Plaintiff, two officers examined the interior of his vehicle through the windows for several minutes, and Baisden examined the vehicle's interior through the windows for eight minutes. (Doc. # 20 at ¶ 15). Officers opened the vehicle after the visual examination discovered no contraband. (*Id.* at ¶ 16). Because the Amended Complaint avers that the officers examined the vehicle for several minutes (presumably in an attempt to find plainly visible contraband) and only opened the vehicle after the lengthy examination, it follows that Plaintiff has plausibly alleged that the officers lacked probable cause to believe that the vehicle contained contraband before they opened it.

[4] Alternatively, Baisden argues that Plaintiff waived the malicious prosecution claim against him because one paragraph of the claim avers that it "is brought against Defendant Anderson in his individual capacity." (Docs. # 20 at ¶ 68; 28 at 8-9; 33 at 13). A review of the malicious prosecution claim, though, reveals that (1) it was brought against all Defendants, (2) it alleges malicious conduct committed by Defendant Baisden, and (3) Plaintiff either mistakenly substituted Anderson for Baisden or omitted the word "also" from paragraph 68. (*See* Doc. # 20 at ¶¶ 64-70). This objection is meritless and due to be overruled.

Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). The elements for a malicious prosecution claim include: (1) "a criminal prosecution instituted or continued by the present defendant"; (2) "with malice and without probable cause"; (3) "that terminated in the plaintiff accused's favor"; and (4) "caused damage to the plaintiff accused." *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003). Alabama's elements for malicious prosecution follow the common law elements. *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831-32 (Ala. 1999). And, Alabama law provides that a party providing testimony to a prosecuting authority may be sued for malicious prosecution if he or she brings about the indictment or prosecution through perjury. *Shoney's Inc. v. Barnett*, 773 So. 2d 1015, 1023 (Ala. Civ. App. 1999).

An arrest becomes constitutionally unreasonable if done without probable cause. *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997). Therefore, if the arrest was based upon probable cause, a Section 1983 malicious prosecution claim necessarily fails. *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008). Also, as with a claim of unlawful arrest, an officer raising the defense of qualified immunity must only show arguable probable cause to defeat a malicious prosecution claim. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 n. 25 (11th Cir. 2010) (applying the "same 'arguable probable cause' standard in the qualified immunity context" for a § 1983 malicious prosecution claim).

Here, the court agrees with the Magistrate Judge that Baisden plausibly lacked arguable probable cause for Plaintiff's arrest because the arrest described in the Amended Complaint was based solely on the fruits of the unconstitutional search. Moreover, Plaintiff plausibly indicates that Baisden gave perjured testimony during a probable cause hearing that caused a state-court judge to find probable cause for Plaintiff's arrest. (*See* Doc. # 20 at ¶¶ 18-21). If true, Baisden

cannot rely on qualified immunity to shield himself from liability for such false statements. *Jones*, 174 F.3d at 1285. Likewise, Baisden cannot receive state-agent immunity for the state-law malicious prosecution claim because Plaintiff's version of events shows a lack of arguable probable cause and malice. *Grider*, 618 F.3d at 1259.

### C. Objection to the Magistrate Judge's Analysis of the Outrage Claim

Baisden argues that the Magistrate Judge erred by applying the law-of-the-case doctrine to foreclose further review of the outrage claim. (Doc. # 33 at 2-3, 13). But here, the question of whether the law-of-the-case doctrine applies to earlier opinions issued in this case is not dispositive. This is the case because, in any event, the undersigned clearly erred by not dismissing Plaintiff's outrage claim when ruling on the first Report and Recommendation issued in this case. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1370-71 (11th Cir. 2003).

The elements of the tort of intentional infliction of emotional distress, also called the tort of outrage, are that (1) "the defendant's conduct was intentional or reckless," (2) the conduct "was extreme and outrageous," and (3) the conduct "caused emotional distress so severe that no reasonable person could be expected to endure it." *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997). The Alabama Supreme Court in *Potts v. Hayes*, 771 So. 2d 462 (Ala. 2000), stated that it has recognized the tort of outrage "in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." *Id.* at 465 (internal citations omitted). These three kinds of categories are not necessarily the only sufficient type of conduct that could plausibly plead intentional infliction of emotional distress.[5] *Little v. Robinson*, 72 So.

---

[5] In *O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011), *abrogated in part on other grounds by Ex parte Vanderwall*, 201 So. 3d 525 (Ala. 2015), the Alabama Supreme Court "affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning

7

3d 1168, 1172-73 (Ala. 2011). Nevertheless, the guiding inquiry is ultimately whether a plaintiff has alleged facts "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980). Whether a claim presents the requisite level of outrageousness to sustain a claim for intentional infliction of emotional distress is a question of law. *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1258 (11th Cir. 2016).

Here, Plaintiff has not pled conduct sufficiently outrageous conduct to support an outrage claim under Alabama law. Baisden's allegedly unconstitutional conduct during the search and his false testimony during the probable cause hearing are not analogous to the three categories of conduct deemed outrageous in *Potts*. *See* 771 So. 2d at 465. Nor it is analogous to the sexual misconduct and professional misconduct deemed outrageous in *O'Rear*. *See O'Rear*, 69 So. 3d at 118-19. The initial Report and Recommendation relied on *Woodruff v. City of Tuscaloosa*, 101 So. 3d 749, 755 (Ala. 2012), to support the proposition that "the tort of outrage may be actionable in cases also alleging malicious prosecution and false arrest, where the plaintiff has alleged that he suffered emotional distress." (Doc. # 13 at 39). To the contrary, the *Woodruff* opinion did not address the extreme and outrageous conduct element of the tort. *See* 101 So. 3d at 754-56. Rather, it affirmed the dismissal of the plaintiff's outrage claim because the plaintiff clearly asserted that he did not suffer emotional distress from the alleged outrageous conduct. *Id.* at 755-56. Thus, the court cannot rely on the *Woodruff* opinion as support for an outrage claim premised upon the allegations in the Amended Complaint.

---

his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction." *Little v. Robinson*, 72 So. 3d 1168, 1172-73 (Ala. 2011).

The initial Report and Recommendation also determined that a plaintiff may have a viable outrage claim "where police officers abuse the public trust and act outside the bounds of their positions." (Doc. # 13 at 40). The best opinion to support the abuse-of-public-trust outrage claim suggested by the initial Report and Recommendation is *Woodley v. City of Jemison*, 770 So. 2d 1093 (Ala. Civ. App. 1999). In *Woodley*, a police officer reportedly harassed a woman with several obscene and threatening telephone calls. 770 So. 2d at 1094. When the woman obtained a new, unlisted telephone number, the officer insisted that she file a police report about the calls and received the woman's new telephone number through the reporting process. *Id.* at 1095. The harassing calls commenced soon thereafter. *Id.* The Alabama Court of Civil Appeals held that the officer's obscene telephone calls could support an outrage claim because the officer's breach of the public's trust that granted him access to private information went "beyond the bounds of decency." *Id.* at 1096.

Baisden's actions do not present a comparable breach of the public's trust in police officers. Unlike the officer in *Woodley*, Baisden is not alleged to have used private information obtained through his job duties for personal purposes. Rather, Plaintiff alleges that Baisden performed an unconstitutional search and lied under oath to protect a prosecution based on the fruits of that search. The Eleventh Circuit has distinguished lies given by an officer in an attempt to perform work duties from the breach of public trust at issue in *Woodley* and has held that such lies do not constitute extreme and outrageous conduct that supports an Alabama outrage claim. *Tinker v. Beasley*, 429 F.3d 1324, 1330-31 (11th Cir. 2005) (distinguishing false information given to a prisoner about her legal representation from *Woodley* because the officers lied to the prisoner "with a view to accomplishing something within the bounds of their role as police officers"). While Baisden's alleged perjury is distinguishable from the false statements and

9

coercive questioning at issue in *Tinker*, it is also distinguishable from the harassing conduct at issue in *Woodley*. And, the court observes that Baisden's alleged conduct readily gives rise to a malicious prosecution claim that protects criminal defendants from perjury by officers during probable cause hearings. *Cf. id.* at 1330-31 (distinguishing coercive questioning during a criminal investigation from coercive conduct by insurance investigators because there was "no other civil law effectively preventing" coercive conduct by insurance investigators). Thus, Plaintiff's allegations do not establish a plausible outrage claim under *Woodley*.

For the reasons explained above, the court clearly erred in its initial conclusion that the outrage claim was due to go forward. And, the court's initial ruling on the outrage claim would cause a manifest injustice if the court did not remedy it because (1) Baisden could be held liable for outrage based on conduct that Alabama courts have not deemed extreme and outrageous, and (2) Baisden, a public officer, would be required to defend against a claim for which he should not be held liable. *See Moulds v. Bullard*, 452 F. App'x 851, 855-56 (11th Cir. 2011) (affirming the district court's reversal of an earlier ruling where the clear legal error could affect the outcome of the case and would require the defendants to defend themselves against litigation). While the court must defer to its earlier legal conclusion in "a close case," this case is not close. *See Jenkins Brick*, 321 F.3d at 1371. Accordingly, the court is compelled to grant Baisden's motion to dismiss the outrage count in the Amended Complaint.

## IV. Conclusion

For the reasons explained above, Defendant Baisden's objections to the Magistrate Judge's Report and Recommendation (Doc. # 33) are due to be sustained in part and overruled in part. The Magistrate Judge's Report and Recommendation (Doc. # 32) is due to be adopted in part and overruled in part. The court will grant the Motions to Dismiss filed by Defendants

Stephen D. Anderson and the City of Tuscaloosa. Moreover, it will grant Defendant Baisden's Motion to Dismiss in part and deny it in part. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this November 9, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE